**L. R. SMITH, Plaintiff-Appellee,**

v.

**Carl THOMAS, et al., Defendants,**

**County of Dallas, Texas, et al., Defendants-Appellants.**

**No. 82–1089**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Sept. 30, 1982.

Earl Luna, Dallas, Tex., for County of Dallas, Tex., et al.

James C. Barber, Garnett E. Hendrix, Jr., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

While the dust has settled in this fight between a Texas sheriff and his deputy, who, if anyone, was the winner, as measured by the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, remains obscure. The trial court found that the deputy had won and awarded counsel fees. Because we are unable to find any winner or, more precisely put, to find that Smith was a "prevailing party," we reverse.

In the spring of 1980, the then sheriff of Dallas County, Carl Thomas, was engaged in a reelection campaign when he learned that one of his deputies, L. R. Smith, not only supported his opponent, but displayed his preference with placards placed on his automobile. The sheriff summoned Deputy Smith and told him he was fired. Smith, in the true tradition of the modern west, promptly filed suit in federal court contending that this firing violated his rights under the first amendment. The next day, the trial court granted a temporary restraining order blocking the sheriff's action.[1] No evidence was taken but the order issued at the conclusion of a conference in chambers on the strength of the complaint and a supporting affidavit. Nine days later, the parties agreed in writing in a "Consent and Stipulation" to continue the restraining order until "... a hearing is scheduled and

---

1. The parties have disagreed in this appeal over whether Sheriff Thomas had the legal authority to fire Smith or whether final authority to do so resided with the County Commissioners. Regardless, it is undisputed that Smith never left the county payroll and remained employed, in every practical sense, as a deputy sheriff. The temporary restraining order only maintained the status quo whether it accomplished a "reinstatement" of Smith who was never formally terminated or whether it blocked a possible termination by the County Commissioners acting on the sheriff's recommendation. Viewed functionally, this disagreement is not relevant to our determination that Deputy Smith was not a "prevailing" party.

held on plaintiff's request for preliminary injunctive relief." The usual pleadings followed including motions to dismiss and answers, and in turn on September 29, 1980, a motion for summary judgment.

No hearing or other application for preliminary or permanent injunctive relief was ever held. In the meantime, the question of Sheriff Thomas' right to fire Deputy Smith was effectively settled by the voters in the 1980 election when Sheriff Thomas was defeated for reelection. There the matter remained until February 27, 1981 when Smith applied for attorneys' fees and costs. On March 10, 1981, defendants' motion for summary judgment was denied.

Following a hearing on the application for attorneys' fees, the trial court on December 29, 1981 (approximately one year after Sheriff Thomas' departure) entered a judgment awarding attorneys' fees in the amount of $14,375 against the named defendants, including Dallas County, providing "this judgment shall be enforceable against the Treasury of Dallas County, Texas." This judgment, now the subject of this appeal, decided no issue regarding the substantive rights of Deputy Smith, made no mention of injunctive relief, and granted Smith no relief except counsel fees.

Dallas County claims on appeal that Smith was not a prevailing party because (1) he was never formally terminated by Sheriff Thomas and his civil rights were thus not violated, (2) the "Consent and Stipulation" filed April 9, 1980 was not a settlement of Smith's claims, and (3) the grant of the temporary restraining order was, at best, a procedural victory. Smith replies that he prevailed in obtaining the temporary restraining order or, at the least, that the case was effectively settled.

The trial court, noting that "attorneys' fees may be awarded to the plaintiff whose civil rights have been vindicated by settlement," found "the settlement in which the defendants agreed to reinstate the plaintiff was a direct result of the filing of this suit and the granting of the application for temporary restraining order."

We have no quarrel with that principle. It was established explicitly by the Supreme Court in *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). The difficulty is that there is no record support for the conclusion that any settlement of Smith's claims was ever reached. Nor does the record support a characterization of the Consent and Stipulation as a settlement agreement. To the contrary, the letter by which the proposed order was transmitted by defense counsel stated, "I am enclosing a file-marked copy of the stipulation extending the T. R. O. Thank you for your cooperation. I think at this point, it behooves us to get together and talk about a possible settlement of this action."

The only sense then in which Smith arguably "prevailed" is in obtaining a temporary restraining order issued without contest to maintain the status quo. Yet, the grant of the temporary restraining order did not determine the merit of any of Smith's claims. It served to "preserve the status quo pending a trial on the merits . . ." *Collum v. Edwards*, 578 F.2d 110, 113 (5th Cir. 1978). In *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1979), the Supreme Court instructed:

> It seems apparent from these passages that Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims. For only in that event has there been a determination of the "substantial rights of the parties."

*Id.* at 757–58, 100 S.Ct. at 1989.

At the same time, this court has suggested that a party can prevail even if his relief was only preliminary, at least when the preliminary relief leads a defendant to remedial action, *Iranian Students Ass'n v. Edwards*, 604 F.2d 352 (5th Cir. 1979), or grants the primary relief sought, *Doe v. Marshall*, 622 F.2d 118 (5th Cir. 1980). Moreover, that remedial action need only be actively caused by the suit or arguably a result for which the suit was a catalyst.

At least implicit in this approach is a rejection of any notion that prevailing par-

ty status is indexed by the label of the order. Instead, the answer to the question of who has prevailed is best obtained by focus upon the achievements of the suit's prosecution juxtaposed to its central purpose, at whatever stage of the suit the inquiry is made. A three-judge court of this circuit, convened in a voting rights case, has plowed similar terrain. We are persuaded by its reasoning:

> It is necessary to distinguish between two forms of interim or preliminary relief. On the one hand, interim relief can serve as, or be predicated upon, an adjudication on the merits. Thus, in *Williams v. Alioto,* [625 F.2d 845, 847-8 (9th Cir. 1980), *cert. denied,* [450] U.S. [1012], 101 S.Ct. 1723 [68 L.Ed.2d 213] (1981)], the district court entered a preliminary injunction enjoining certain police investigative procedures. Although defendants never had the opportunity to appeal the injunction because the case was mooted by the investigation's completion, *see* [450] U.S. [1012], 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981) (dissent by Justices Rehnquist and White to denial of certiorari), the Court of Appeals, in awarding attorney's fees, noted that the district court had found the investigative procedures to be unconstitutional; plaintiffs had obtained a determination on the merits. 625 F.2d at 847-48. On the other hand, interim relief may be no more than a means for a court to mitigate or forestall injury until it can rule on the merits. This distinction was made plain in *Bly v. McLeod,* [605 F.2d 134 (4th Cir. 1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980)],[2] in which the district court entered a temporary restraining order allowing plaintiffs to vote in a primary election. The case was soon thereafter mooted by legislative amendment. In denying plaintiffs their attorney's fees, the Court of Appeals observed that the TRO "was in no way a determi-

nation on the merits," but merely prevented irreparable harm. 605 F.2d at 137.

*Davis v. City of Ennis,* 520 F.Supp. 262, 265-66 (N.D.Tex.1981).

Deputy Smith has pointed to no "remedial action" by any defendant. Any threat of being fired was ended, not by any change of mind of the sheriff, but by the extraneous circumstance that he was voted out of office before the case was tried.

The primary purpose of Deputy Smith's suit was to keep his job. The suit did shield him from what was, at the least, a threat to his job. But for the temporary restraining order, Smith may have lost his job before the sheriff lost his. That is, the primary purpose of the suit, job retention, and the result, job retention, were causally related, but only in the sense that while the status quo was being maintained, the threat independently dissipated.

There is no suggestion in the congressional history of 42 U.S.C. § 1988, nor in the cases that have applied it, that it ought be read in a niggardly way. Nor do we do so here. Admittedly, "prevailing" is far from self-defining. Its spongy meaning absorbs one's own expectation and view of a suit's purpose. Despite these Rorschach qualities, there are definable core limits. We leave their articulation to the case process deciding only this case with the reminder that, as in *Davis v. City of Ennis,*

> where, as here, plaintiff never obtained a court order in his favor that directly relates to the merits, he must show some causal connection between the suit and the events that moot his claim if he is to be considered to have "prevailed."

520 F.Supp. at 265.

REVERSED.

---

**2.** In *Hanrahan v. Hampton,* 446 U.S. 754, 759, 100 S.Ct. 1987, 1990, 64 L.Ed.2d 670 (1979), the Supreme Court in referring to "... determinations [that] may affect the disposition on the merits, but were themselves not matters on

which a party could 'prevail' for purposes of shifting his counsel fees to the opposing party under § 1988 ..." cited *Bly v. McLeod,* 605 F.2d 134, 137 (4th Cir. 1979).