William **TAYLOR, et al., Plaintiffs,**

v.

**CITY OF FORT LAUDERDALE, et al., Defendants.**

No. 82–6408–Civ–JCP.

United States District Court, S.D. Florida.

April 5, 1984.

Steven Wisotsky, Fort Lauderdale, Fla., Edward T. Stein, Chicago, Ill., for plaintiffs.

Phillip Shailer, Fort Lauderdale, Fla., for defendant Butterworth.

Bruce Barkett, Asst. Atty. Gen., Tallahassee, Fla., Donald Hall, City Atty. for the City of Fort Lauderdale, Fort Lauderdale, Fla., for defendants.

## ORDER

PAINE, District Judge.

This cause is before the Court on Plaintiff's motion for a summary judgment on Count I of the complaint (DE 58). Count I of the complaint alleges that Chapter 38–1 et seq. of the Fort Lauderdale Code was unconstitutional as applied to Plaintiffs. Specifically, Plaintiffs attack Chapter 38–9 of the Code (hereinafter the charitable solicitation ordinance) which provides:

> It shall be unlawful for any person or organization to solicit gifts or donations for charitable or religious purposes within the city, without first having obtained a permit therefor from the chief license inspector.

In essence Plaintiffs allege that Defendants, City of Fort Lauderdale, Donald R. Hall and Jim Turner applied "the Ordinance in such as [sic] way as to exempt some [religious] denominations from the registration and reporting requirements, [and that by so doing], the defendants confer a benefit upon some religions as opposed to others. Such official denomiational preference is forbidden by the Establishment Clause of the First Amendment to the United States Constitution." *See* DE 1 at 5 ¶ 20.

Summary judgments may be granted on the basis of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show[ing] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c).

Attached to Plaintiffs' motion for a preliminary injunction (DE 2) is the declaration of William Taylor. The parties stipulated in open court on July 12, 1982, at the hearing on Plaintiffs' motion for a preliminary injunction, that the statements contained within the declaration were true and correct. The Court therefore incorporates by reference the statements made by Mr. Taylor in this order.

Mr. Taylor's declaration relays in pertinent part that:

1. he is the public relations director for the Unification Church and is responsible for the area encompassing the State of Florida;

2. he obtained solicitation permits on behalf of the church for the years 1979 through 1981;

3. he learned from Defendant Turner, on May 4, 1982, confirmation of the fact that the City of Fort Lauderdale did not require all religions soliciting donations within the city to obtain permits. Turner related that only those religious organizations that solicited outside were required to obtain permits;

4. he inspected a list of permit holders from the City and determined that no Fort Lauderdale Churches which regularly solicit donations were permit holders;

5. the Unification Church was founded in 1954, and is established in 120 counties; and

6. the Unification Church emphasizes evangelical missionary work and employs door to door solicitation and public place proselytizing to support the Church.

In addition to this declaration there is the testimony of Defendant James Turner which was elicited on July 12, 1982 at the hearing on Plaintiff's motion for a preliminary injunction. Defendants assert that this testimony is equivocal and therefore presents a genuine issue of material fact which would preclude summary judgment as to Count I. *See* DE 37 ¶ 1. The Court notes, however, that Defendants have filed no affidavits nor adduced any additional testimony at the hearing on motion for summary judgment which would clarify the alleged equivocation in Turner's testimony.

It is conceivable that if one read Turner's testimony piecemeal it would appear equivocal and/or contradictory. The Court has reviewed the testimony of James Turner and finds that, when read in its entirety, there are no mutually exclusive statements which would warrant a determination that the testimony was equivocal or contradictory. Defendants' argument of a genuine issue of material fact is premised upon references to isolated instances in Turner's testimony. This Court is of the view that fairness dictates consideration of testimony as a whole, with due regard to the internal consistency contained within the testimony.

Mr. Turner's testimony revealed that he has been the Chief License Inspector for the City of Fort Lauderdale since 1981. He was appointed to that position through the City Manager's office. Mr. Turner stated that he had been with the City for twenty three years and he "took the law the way it had been applied for the previous years...." R at 5. Mr. Turner then goes on to state that permits are required for solicitation on the streets of Fort Lauderdale. R at 6. He goes on to state that no permit would be required for "passing the collection plate." R at 7, 8. Mr. Turner further agreed that the "route" the City has taken in issuing permits is that "for a traditional organization inside its own house of worship, that solicitation would not require a permit", R at 7, but that regardless of the denomination, every church would be required to obtain a permit to solicit out of doors. R at 7–8. It is clear from the transcript that the word "traditional" connotes Catholic, Baptist, Protestant and Jewish religions.

Turner testified that there is a place on the application, at page 2, question 6, requesting the "place" of solicitation. R at 11. This reference was culled from a permit application that had been filed by Plaintiffs in 1982 for a permit to solicit in a Holiday Inn. R at 12. Turner then states that in addition to groups soliciting outdoors, groups that are not soliciting in their "specific churches" must have a permit. R at 12.

█ All of this testimony was elicited by Plaintiffs' counsel on direct examination of Turner, who was called as an adverse witness. It is interesting to note that counsel for the Defendants charged in Count I

declined the opportunity to cross examine the witness, again passing up a chance to clarify any perceived equivocation. The bottom line of Turner's testimony is that the City through its officials, have construed the charitable solicitation ordinance to require permits for all outdoor solicitations, as well as any religious solicitations attempted indoors where that solicitation is not to be accomplished within the religion's specific church edifice. If indeed there was a genuine issue as to these facts, from Defendants' perspective, the Court is at a loss to determine why they have allowed several opportunities to point out the disputed facts to pass. It is axiomatic that the mere suggestion of a genuine issue of material fact is insufficient to, in and of itself, defeat a motion for summary judgment. *Curl v. International Business Machines,* 517 F.2d 212 (5th Cir.1975). The fact that the parties differ on the legal conclusions to be drawn from the facts in the record is not a bar to summary judgment. *Sagers v. Yellow Freight System, Inc.,* 529 F.2d 721 (5th Cir.1976).

▮ In this case there is no genuine dispute as to the material facts perceivable to the Court. Consequently the first requirement for a summary judgment has been met. The issue in this case turns, rather, on the second prong of the test for issuance of a summary judgment: whether Plaintiffs are entitled to a judgment in their favor as a matter of law.

There is little doubt that the question in this case revolves around which body of case law governs the facts before the Court. Plaintiffs solicit in public parks, sidewalks, streets and other public areas ideally suited to the expression of ideas, whether religious or secular in nature. *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). The Plaintiffs, as full time missionaries, are fully protected by the First Amendment to the United States Constitution in their proselytizing and contribution seeking. *Murdock v. Pennsylvania,* 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943); *United*

*States v. Silberman,* 464 F.Supp. 866, 871 (M.D.Fla.1979).

Consequently, the Court is faced with deciding if the solicitation ordinance· has been discriminatorily applied so as to infringe upon Plaintiffs' constitutional rights, while other ·religious entities within the city limits were free from the application of the ordinance. The inquiry should be broken into two areas:

1. Were Plaintiffs discriminated against by being required to obtain permits for outdoor solicitation?; and

2. Were Plaintiffs discriminated against by the requirement that they· obtain a permit for solicitation in a Holiday Inn where other religious groups are not required to obtain permits in their "specific churches"?

### I.   Outdoor Solicitation

Review of the record shows no discrimination by the City in requiring permits for outdoor solicitation. The testimony of Mr. Turner is unequivocal that "irregardless [sic] of what the church or organization is [i]f they go out on the streets and solicit gifts or funds ..." a permit is required. There is no showing in the record that any of the described "traditional" churches ever solicited out of doors without a permit, or that a permit requirement was waived by Defendants for such outdoor solicitation.

### II.   Indoor Solicitation: "Edifice Discrimination"

Plaintiffs urge this Court to apply *Larson v. Valente,* 465 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982) to this case. In *Larson* the Unification Church challenged, and the United States Supreme Court struck down, a Minnesota registration and financial reporting statute as violative of the First Amendment because it exempted religious organizations that received more than half their total contributions from members while applying the statute to organizations such as the Unification Church.. The Court held the "fifty percent rule ... clearly grants denominational preferences of the sort consistently and firmly depre-

cated in our precedents" *Id.* at 246, 102 S.Ct. at 1684. The Court reasoned that the principal effect of that statute was "to impose the registration and reporting requirements of the act on some religious organizations but not on others...." *Id.* at 253, 102 S.Ct. at 1687. Finally the Court concluded that the statute was not closely fitted to the furtherance of a compelling governmental interest. *Id.* at 251, 102 S.Ct. at 1686.

The City argues that *Larson* does not apply because there is no "denominational preference". They argue that since the City applies the registration requirement to all outdoor solicitation and to all religious organizations not soliciting in their "specific churches" there is no denominational discrimination. Defendants assert that this case should be decided on the precedent in *ISKCON v. City of Houston*, 689 F.2d 541 (5th Cir.1982).

Initially the Court notes the error in Defendants' contention that the *ISKCON* decision is binding upon this Court. *See* DE 37, at 3 ¶ 2. The date of the *ISKCON* opinion was October 18, 1982 and was rendered by a three judge Fifth Circuit Unit A panel. The *ISKCON* decision was rendered after the creation of the Eleventh Circuit on October 31, 1981, which includes the State of Florida. *ISKCON* was a decision of the Unit A panel and it has been held by the Eleventh Circuit that post date October 31, 1981 decisions from the Fifth Circuit are binding in the Eleventh Circuit only if it is an en banc of the entire Fifth Circuit, an en banc of the Fifth Circuit Panel B; or a panel of the Fifth Circuit Panel B. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982). The fact that *ISKCON* is persuasive, rather than binding precedent is brought forth merely to clarify the sometimes murky area of precedent and does not reflect on the evaluation given to the *ISKCON* holding.

In *ISKCON* the ordinance at issue made it unlawful to solicit funds for charitable purposes without complying with certain registration, identification and financial disclosure requirements. *ISKCON*, 689 F.2d at 543–44. The purpose of the Houston ordinance was to regulate not religion but the solicitation of funds. *Id.* at 549.

The *ISKCON* Court, in upholding the Houston ordinance, distinguished *Larson.* "There is no exemption in the Houston ordinance similar to the 50 percent rule in the Minnesota statute." It should be noted that the Houston ordinance contains specific exemptions which would have applied to Plaintiffs here as well as other traditional religions: where "the solicitation of funds for charitable purposes by a person when such solicitation occurs on premises owned or controlled by the person soliciting funds (e.g. a "specific church") or with the permission of the person who owns or controls the premises (e.g. the Holiday Inn)" *Id.* at 562. The *ISKCON* Court noted that passing the plate at the Krishna temple would not require a permit; presumably neither would passing the plate at a Houston Catholic or Protestant church or a Jewish temple.

The Fort Lauderdale ordinance is devoid of any such exemptions. The City, in applying the ordinance, does not require a permit for passing the plate in a traditional edifice yet sees fit to require those visiting the Unification Church's "temporary edifice" at the Holiday Inn to require a permit.

The only distinction in the City's application of the ordinance is whether the religion owns or operates the edifice on a more permanent basis than evangelical religions such as Plaintiffs who have no permanent edifice within the City of Fort Lauderdale. By singling out those religious organizations which are evangelical in nature and have no "specific church" the City and its officials have engaged in a pattern and practice of denominational discrimination which is repugnant to the values secured by the First Amendment to the United States Constitution. This Court sees no appreciable difference in exempting religious organizations because they can muster fifty percent of their support from their members and exempting religious organiza-

tions which can afford, or choose, to maintain a "specific church" or edifice within a given city's limits. Whether the religion has maintained an edifice for fifty years in the City of Fort Lauderdale as opposed to one day at a Holiday Inn is of no moment. The salient fact is that one church with an edifice is not required to have a permit to solicit indoors while another religious group with a rented "edifice for a day" is required to obtain a permit. The very exceptions to the Houston ordinance which would have applied were this controversy in the Houston situs might have provided the close fit necessary to avoid a finding of unconstitutional application. *Larson,* 102 S.Ct. at 1685. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Id.* at 1683. That command has been violated by the City and its officials' discriminatory application of the Fort Lauderdale ordinance to Plaintiffs' indoor solicitations.

This is not to say the ordinance is unconstitutional on its face, it has not been attacked on that basis nor has the Court analyzed it on that basis. The City cannot engraft exemptions on the ordinance which favor "traditional" religions. This has occurred in the instant case. Accordingly, it is

ORDERED and ADJUDGED that the Plaintiffs' motion for summary judgment as to Count I of the complaint is granted only insofar as it alleges unconstitutional application of the Fort Lauderdale Solicitation Ordinance to Plaintiffs' indoor solicitation.