William TAYLOR, et. al.
Plaintiffs-Appellants,

v.

CITY OF FORT LAUDERDALE, Leo
Callahan, etc., Donald R. Hall, etc.,
Defendants-Appellees.

No. 85–5986
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

March 2, 1987.

Rehearing and Rehearing En Banc
Denied April 6, 1987.

Anderson, Circuit Judge, filed dissent-
ing opinion.

**1552**

Steven Wisotsky, Ft. Lauderdale, Fla., for plaintiffs-appellants.

Lindsey A. Payne, City of Fort Lauderdale, Ft. Lauderdale, Fla., for defendants-appellees.

Before JOHNSON and ANDERSON, Circuit Judges and GARZA *, Senior Circuit Judge.

GARZA, Senior Circuit Judge:

This case arises from appellant's claim for attorney's fees under 42 U.S.C. § 1988 with regard to actions taken challenging a solicitation ordinance of the City of Ft. Lauderdale. Since appellant Taylor successfully obtained a preliminary injunction on the merits of the central substantive issue in the § 1983 case underlying this appeal, we reverse the district court's denial of attorney's fees to plaintiffs and remand the case for a hearing on reasonable attorney's fees.

### I

The relevant facts are not in dispute. At the hearing on Plaintiff's Motion for Preliminary Injunction, the parties stipulated to the truth of the Declaration of Plaintiff William Taylor filed in conjunction with the Motion. The Declaration sets forth these facts:

1. I am a member of the Unification Church and have been since 1974. I am 27 years old.

2. My responsibility in the Church is Public Relations Director for the Southeast region of the United States. My duties and responsibilities cover the State of Florida.

3. Prior to May 1, 1982, I on behalf of my Church had solicitation permits for the years 1979, 1980 and 1981. In order to obtain these permits I, on behalf of my Church, completed an application and filed financial reports as required by the Fort Lauderdale Solicitations Ordinance.

4. On or about May 4, 1982, I learned from Mr. Jim Turner, the chief license inspector for the City of Fort Lauderdale and the official who is responsible for issuance of solicitations permits that the City of Fort Lauderdale did not require

---

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by desig-     nation.

applications or financial reports from all religious organizations who solicit funds in the City of Fort Lauderdale. More specifically, Mr. Turner told me that permits are issued only to those religious organizations that solicit donations outside the church, from door-to-door and the like.

5. On or about May 12, 1982, I inspected a list of permit holders and viewed briefly the financial reports or 990 form filed by said permit holders with the chief inspector's office. My inspection of the permit holders and financial reports revealed that there were a total of thirteen (13) solicitation permits issued to the following organizations:

VFW Post 1966

Palm Beach Treatment Home

NALC Branch

Leukemia Society of America, Inc.

Cystic Fibrosis Foundation

The Bible Speaks

Delta Sigma Theta Sorority, Inc.

Robert L. Agee, VFW Post 1966

Christian Record Braille Foundation, Inc.

Broward County Girl Scout Council

Fraternal Order of Eagles

Teen Challenge

Arthritis Foundation

Only one organization, The Bible Speaks, might arguably qualify as a religious organization. No Fort Lauderdale churches which regularly solicit donations had been issued permits.

6. The Unification Church is a California non-profit corporation, holding federal and Florida tax exemptions.

7. Founded in 1954, the Church is established in 120 countries throughout the World. The Church emphasizes evangelical missionary engagements and sponsors religious rallies, workshops, retreats, and lectures. Included in the Church activities are door-to-door and public-place proselytizing and solicitation of funds to support the Church.

8. As members of the Church, we seek to distribute tracts and solicit contributions to support our Church and give gifts to the people of Florida.

.    .    .    .    .

20. Church members proselytize and engage in public evangelism throughout the United States, including witnessing, both on the street and house-to-house, literature distribution, gift giving, public lectures and speaking engagements, fund raising and hospital and retirement home visitation.

After discovering that other religious groups in Ft. Lauderdale were not required to obtain solicitation permits when they sought donations inside a church or on church property, Taylor and other Unification Church members filed suit. On June 21, 1982, plaintiffs filed a two-count civil rights action under 42 U.S.C. § 1983 for declaratory relief and a preliminary and permanent injunction: plaintiffs sought to declare unconstitutional and to enjoin enforcement of the Ft. Lauderdale City Code Chapter § 38–1 *et. seq.*[1] and the Florida Transportation Code, Section 339.301,[2] as

---

**1.** Count 1 of the complaint alleges that Chapter 38–1 *et seq.* of the Ft. Lauderdale Code was unconstitutional as applied to Plaintiffs. The gravamen of Plaintiff's complaint specifically attacks § 38–9 of the City Code, which provides:

It shall be unlawful for any person or organization to solicit gifts or donations for charitable or religious purposes within the city, without first having obtained a permit therefor from the chief license inspector.

Plaintiffs were also required, under § 38–10, to make detailed financial disclosures about the church or submit a copy of their most recent IRS tax form showing tax exempt status in order to obtain a solicitation permit. This provision was challenged as an infringement on the religious group's constitutional rights.

**2.** Fla.Stat. (1981) provides, in pertinent part:

339.301 Unlawful commercial use of state-maintained road right-of-way; penalties.

(1) Except when otherwise authorized by law or by the rules and regulations of the department, it is unlawful to make any commercial use of the right-of-way of any state-maintained road.... Such prohibited uses include, but are not limited to ... the *solicitation* for the sale of goods, property, or services or for *charitable purposes*.... (emphasis added).

unconstitutional as construed and applied against the plaintiffs because such state action deprives plaintiffs of their constitutional rights of freedom of religion and speech.

The district court heard the Motion for Preliminary Injunction on July 12, 1982. The only witness to appear was Mr. James Turner, the Chief License Inspector for the City of Ft. Lauderdale since 1981. Turner testified that while all solicitations inside the City required a permit, he "took the law the way it had been applied for the previous years" before he was appointed Chief License Inspector. Fort Lauderdale's enforcement scheme, as described by Turner, was two-fold: a) All religious or charitable organizations soliciting out-of-doors must have a permit ("[A]nyone that solicits religious funds or gifts from the taxpayers of Fort Lauderdale upon the streets of Fort Lauderdale requires a permit, irregardless of what the organization is"); and b) if the solicitation is indoors but not on property owned or controlled by the solicitor, a solicitation permit was also required. This meant that "Catholic, Baptist, Protestant, [or] Jewish" congregations which "passed the plate" inside a traditional house of worship, to church members and visitors alike, would not need a City permit. The Unification Church, even if it had a "members only" meeting at the Holiday Inn and took a collection, would need a permit or be in violation of the City ordinance. The district court termed this "edifice discrimination."

On November 1, 1982, the district court entered an Order granting plaintiffs' Motion for Preliminary Injunction on Count I[3] against the solicitation permit requirement of Section 38–9 of the Ft. Lauderdale City Code.

The district judge specifically found "that *in practice* the City has exempted established religious organizations from both the registration and reporting require-

ments [of the ordinance] whether they solicit indoors or out-of-doors." (emphasis by the court). Mr. Turner also stated that "unless the Plaintiffs secured a solicitation permit, Unification Church members who attempt to solicit donations from members of the general public would be subject to arrest." Following well-established First Amendment doctrine, the lower court recognized that religious solicitation is protected activity, *Murdock v. Pennsylvania,* 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943), and the threat of criminal prosecution effectively chills the exercise of free expression, *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Thus, without a compelling government interest to justify the City's enforcement scheme which was narrowly tailored to achieve its desired ends, *Larson v. Valente,* 456 U.S. 228, 246–47, 102 S.Ct. 1673, 1684–85, 72 L.Ed.2d 33 (1982), the application of City Code § 38–9 was presumptively invalid. The district court entered the preliminary injunction because the plaintiffs "have suffered, and continue to suffer" irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. Unit B 1981). The injunction provided the City may not require the plaintiffs to register under Section 38–9 "unless and until all religious organizations which solicit donations within the City of Ft. Lauderdale, whether indoors or out-of-doors, are also required to register for such solicitation permits." (Order, Case No. 82–6408, Nov. 1, 1982).

After a brief exchange of limited interrogatories, plaintiffs moved in March of 1983 for summary judgment on Count I of the complaint. The district court heard

---

**3.** The primary focus throughout the litigation was the licensing and financial disclosure requirements of Ft. Lauderdale's solicitation permit ordinance challenged in Count I. Count II, which concerned the Florida Transportation Statute, was never seriously litigated. The Court reserved ruling on Count II pursuant to an agreement of the parties, and plaintiffs voluntarily dismissed Count II on April 12, 1985.

oral argument on the Motion, and on April 8, 1984, the court granted plaintiffs' Motion for Summary Judgment in part. 583 F.Supp 514 (S.D.Fla.1984). The district court found that there had been no discrimination by the City in its permit requirement for outdoor solicitations. There had been "no showing in the record that any of the described 'traditional' churches ever solicited out-of-doors without a permit" or that the City ever waived the permit requirement for another group that solicited outdoors.[4] *Id.* at 517. The district court did find "edifice discrimination" in the City's policy of requiring evangelical churches that had no permanent structure to have a solicitations permit to meet and collect donations indoors while other church groups established in a house of worship on a specific site were exempted from the permit requirement. Therefore, plaintiffs received a partial summary judgment on Count I "only insofar as it alleges unconstitutional application of the Fort Lauderdale Solicitation Ordinance to plaintiff's indoor solicitation." 583 F.Supp. at 519. Plaintiffs' complaint did not explicitly allege any indoor solicitation.[5]

Beginning in the fall of 1984, the Ft. Lauderdale City Commission took under consideration the repeal of Section 38–9, along with other provisions of Chapter 38.

Chapter 38, including Section 38–9, was repealed and replaced by a new City Ordinance which became effective on January 3, 1985. The new ordinance made an accommodation for indoor solicitation and exempted it from the permit requirement.[6] However, outdoor solicitation is still regulated by the City under the new scheme. At this point, both parties agreed that plaintiffs' suit became moot.

Plaintiffs thereupon moved for an award of attorney's fees under 42 U.S.C. § 1988 on the ground that they were "prevailing parties" in this case. The City responded that plaintiffs were not prevailing parties because, *inter alia,* the injunction entered applied to only a single section of the entire ordinance, Section 38–9, and *final* relief did not yield a victory for plaintiffs on the merits. In its final judgment dated September 9, 1985, the district court denied the plaintiff's motion for attorney's fees. This appeal followed.

## II

This Circuit follows the "central issue" test for determining and awarding attorney's fees. In order to qualify as a prevailing party under 42 U.S.C. § 1988, the plaintiff must be successful on the central issue in the case, exhibited by the fact that the plaintiff acquired the primary re-

---

4. Though the district court found no evidence in the record of any groups soliciting without a permit, the testimony of Mr. Turner reflects that the City's interpretation of its solicitation ordinance did not require the Democratic or Republican parties to obtain a permit to solicit in public.

5. The language of plaintiffs' complaint dealt with door-to-door and public place solicitations. Counsel for plaintiffs had used a permit application completed by the "U.C.S.S. Spiritual Centre of Cassadaga" when examining Mr. Turner at the hearing on the preliminary injunction; this application was for a permit to meet and solicit donations indoors at the Holiday Inn. The U.C.S.S. Spiritual Centre of Cassadaga is not a party to this litigation.

6. The new ordinance, in § 38–17, lists "Exceptions" to the substantially similar reporting requirements re-enacted as § 38–10 through § 38–15:

    Sec. 38–17. Exceptions.

The following are excepted from the operation of Sections 38–10 through 38–15:

(1) The solicitation of funds for charitable purposes by any organization or association from its members;

(2) The solicitation of funds for charitable purposes by a person when such solicitation occurs on premises owned or controlled by the person soliciting funds or with the written permission of the person who owns or controls the premises.

(3) The issuance of any announcement or advertisement that such solicitation as described in subsections (1) and (2) above will occur or which announces or advertises an event at which unannounced solicitation as described in subsection (1) and (2) above occurs.

Section 38–17 remedies the previous problem of "edifice" discrimination, excepting from registration those religious or charitable groups that solicit contributions on property they own, lease, or occupy and control with the consent of the owner of the premises.

lief sought. *Miami Herald Publishing Co. v. City of Hallandale*, 742 F.2d 590 (11th Cir.1984); *Coen v. Harrison City School Board*, 638 F.2d 24, 26 (5th Cir. 1981); *Iranian Students Assn. v. Sawyer*, 639 F.2d 1160 (5th Cir.1981). The decision on whether to award attorney's fees is made by the district court and reviewable only for abuse of discretion. *Wilson v. Attaway*, 757 F.2d 1227, 1248 (11th Cir. 1985). *Fields v. City of Tarpon Springs*, 721 F.2d 318, 321 (11th Cir.1983). However, the Supreme Court has held that under § 1988 prevailing parties should ordinarily recover attorney's fees "unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). *Espino v. Besteiro*, 708 F.2d 1002, 1006 (5th Cir.1983) (fees awarded prevailing party "as a matter of course").

In *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the Supreme Court set forth the guiding principle that a plaintiff prevails for § 1988 purposes if he "has established his entitlement to *some* relief on the *merits* of his claims, either in the trial court or on appeal." 446 U.S. at 757, 100 S.Ct. at 1987 (emphasis added). The Court went on to explain that fees would be appropriate "where a party has prevailed on an important matter in the course of the litigation, even when he ultimately does not prevail on *all* issues." *Id.* (quoting S.Rep. No. 94–1011, p. 5 (1976)) (emphasis in original). Later, in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court focused primarily on the standards to be used in assessing the *amount* of the prevailing party's award of attorney's fees. The

award of fees, however, comes after a determination that a party has "prevailed," either on "any significant issue" or the "central issue" in the litigation, depending on the Circuit. 461 U.S. at 433, n. 8, 103 S.Ct. at 1939, n. 8.

The application of these two Supreme Court decisions in the appellate courts has been anything but uniform. Of course, a party that obtains a favorable final judgment squarely on the merits is awarded attorney's fees. Conversely, a plaintiff that is denied all substantive relief at every stage of litigation does not become a "prevailing party" under § 1988. The issue before us today is whether a plaintiff who initially obtained a preliminary injunction on the merits and the primary relief sought in the suit but eventually dismissed the suit when it became moot is a prevailing party for reimbursement purposes under § 1988.

A. Preliminary Injunction

■ As this court noted in *Doe v. Busbee*, 684 F.2d 1375 (11th Cir.1982), "a plaintiff may not claim status as a 'prevailing party' by virtue of *any* success during the course of a civil rights case." *Id.* at 1380 (emphasis added). Fees are awarded only when the prevailing party obtains the "primary relief sought." 684 F.2d at 1379; *Taylor v. Sterrett*, 640 F.2d 663, 669 (5th Cir.1981).

The central issue presented by plaintiffs' complaint was that the solicitation permit requirements imposed upon the Unification Church in its outdoor solicitations were unconstitutional because of the permit application process itself and the requirement that religious groups soliciting out-of-doors submit a financial report.[7] The complaint

---

**7.** We realize that this statement of the central issue differs from that of the district court. The district court restated the broad constitutional claims of Plaintiffs' case, to wit, that Count I alleged constitutional infirmity in Section 38–1 *et. seq.* of the Ft. Lauderdale City Ordinance and Count II raised a constitutional attack on Florida Transportation Statutes 339.301. However, we restate the "central issue" more precisely consistent with our belief that the central issue test is one of practicality, not legal formalism. *See Hennigan v. Ouachita Parish School Board*,

749 F.2d 1148, 1152 (5th Cir.1985) ("initial need to identify the goal" plaintiff sought to achieve by bringing suit); *Bly v. McLeod*, 605 F.2d 134, 139 (4th Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980) ("the court should consider the precise factual/legal condition the fee claimant has sought to change" and use that as a "benchmark" to evaluate success); *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 911 (3rd Cir.1985) ("com-

alleged religious discrimination between "traditional" or "established" religions and the Unification Church. The primary relief sought was to suspend the application of the City's permit requirement altogether for outdoor solicitations by the Unification Church. That is exactly what the district court granted in its preliminary injunction.

The cases are split as to whether the granting of a preliminary injunction merits an award of attorney's fees.[8] This court's decision in *Martin v. Heckler*, 773 F.2d 1145 (11th Cir.1985) (*en banc*) held that plaintiffs who alleged an improper change of benefits under the Aid to Families with Dependent Children (AFDC) program of the U.S. Department of Health & Human Services (HHS) were successful in having the previous policy retroactively reinstated; thus, the plaintiffs were entitled to attorney's fees as prevailing parties under § 1988. *Martin* concerned the question whether plaintiffs were prevailing parties when their claims became moot due to government actions subsequent to the filing of the lawsuit. Stating the prevailing party test as whether one "has received substantially the relief requested or has been successful on the central issue," *Martin*, 773 F.2d at 1149 (citing *Watkins v. Mobile Housing Board*, 632 F.2d 565, 567 (5th Cir. Unit B 1980)), the *en banc* Court found that the government's actions afforded plaintiffs success on the merits which vindicated the civil rights claims presented. The plaintiffs in *Martin* received the primary relief they sought without the formal entry of an injunction. The present litigation is much more clear-cut: plaintiffs did receive a preliminary injunc-

tion on the merits which remained in force approximately 26 months, from November 1, 1982, the day the preliminary injunction was entered, through January 3, 1985, when an amended solicitation ordinance was enacted by the City. During this 26 month period the plaintiffs were able to solicit donations in Fort Lauderdale without a permit and without being treated differently than other religious groups.

In a similar case, *Bishop v. Committee on Professional Ethics*, 686 F.2d 1278 (8th Cir.1982), the Eighth Circuit held that preliminary or temporary relief entered by the district court on the *merits* of Bishop's claims entitled him to attorney's fees. Since the trial court had entered declaratory and injunctive relief, the period of time from the district court's judgment until the decision was vacated by mootness was time in which Bishop obtained "some of the benefit of bringing suit" and "essentially succeeded in obtaining sought-after relief." *Id.* at 1291. A binding Fifth Circuit case, *Doe v. Marshall*, 622 F.2d 118 (5th Cir. 1980), also found preliminary relief on the merits afforded prevailing party status and attorney's fees to the successful litigant, even though the case was ultimately mooted when the plaintiff graduated from high school.

In another case dealing with the application of a discriminatory city policy, *Williams v. Alioto*, 625 F.2d 845 (9th Cir. 1980), the plaintiffs sought injunctive and declaratory relief to prohibit the police from a "stop and frisk" campaign against black males after a number of brutal murders. After the district court entered a

---

mon sense comparison between relief sought and relief obtained").

**8.** *Cf. Coalition for Basic Needs v. King*, 691 F.2d 597 (1st Cir.1982) (injunction in existence five days entitled plaintiff to fees as prevailing party under § 1988); *Doe v. Marshall*, 622 F.2d 118, 120 (1980) (preliminary relief may make plaintiff "prevailing party" under statute if it is the "primary relief sought") and *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) "plaintiffs may be considered 'prevailing parties' if they succeed on *any* significant issue in litigation which achieves some of the benefit" of bringing suit) *with Ruckelshaus v. Sierra*

*Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) ("inappropriate" to award "loser" an attorney's fee from "prevailing litigant" without some lasting success by claimant); *Frazier v. Board of Trustees*, 777 F.2d 329 (5th Cir.1985) ("Appellant's success in obtaining a preliminary injunction cannot be considered separable from or unrelated to" ultimate failure to prevail on merits); *see also Section 1983 Litigation: Claims, Defenses and Fees:* Schwartz and Kirklin. (Wiley, 1986) ("debatable" whether plaintiff becomes prevailing party on basis of preliminary injunction).

preliminary injunction against the practice, the city apprehended the wanted suspects and the case became moot. In finding that plaintiffs were prevailing parties in a § 1983 suit the Court reasoned, "the preliminary injunction prevented appellants from continued enforcement of their original guidelines [city policy], which is precisely the relief appellees sought." *Id.* at 847. The preliminary injunction entered in the instant case accomplished exactly the same result: Fort Lauderdale was enjoined from enforcing its unconstitutionally discriminatory solicitation permitting scheme, the goal plaintiffs sought to achieve when bringing suit. This "success" existed for 26 months until the case was mooted when the City repealed its governing ordinance.

■ The rule gleaned from these disparate cases is that a preliminary injunction on the merits, as opposed to a merely temporary order which decides no substantive issues but merely maintains the status quo, entitles one to prevailing party status and an award of attorney's fees. *Smith v. Thomas,* 687 F.2d 113, 115 (5th Cir.1982); *Chu Drua Cha v. Levine,* 701 F.2d 750, 751 (8th Cir.1983) (plaintiff is prevailing party since preliminary injunction, though it may be modified or vacated, "represents substantial measure of success" on merits); *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 329 (5th Cir. 1981) (fee awarded when preliminary injunction granted to overcome city control over application process for opening abortion clinic).

Other cases have come to a contrary conclusion, but we find them distinguished from the case at bar. For example, in *Smith v. University of North Carolina,* 632 F.2d 316 (4th Cir.1980), the court concluded that the injunctive relief obtained was insufficient to establish that the plaintiff had prevailed, because the plaintiff was ultimately unsuccessful on the merits of each and every claim against the university. However, this denial of prevailing party status came after a full trial on the merits, not after subsequent government actions mooted the case. This court's deci-sion in *Doe v. Busbee,* 684 F.2d 1375 (11th Cir.1982), held that where the plaintiffs obtained a preliminary injunction but ultimately did not succeed on the merits they could not be considered prevailing parties. *Busbee* concerned a party that originally obtained injunctive and declaratory relief in the district court, but Supreme Court decisions handed down while the case was on appeal undercut the legal foundation of the district court's decision. Finding that plaintiffs did not ultimately prevail on any legal issue, the *Busbee* court denied attorney's fees. However, the panel in *Busbee* found that the district court had granted the preliminary injunction through "a mistake in law" since Georgia had never actually violated the law, as evidenced by the two intervening Supreme Court decisions. 684 F.2d at 1381. Thus, the plaintiffs in *Busbee* were never actually prevailing parties at all. It is beyond cavil that the injunction entered here properly ended a discriminatory permitting practice by the City. The preliminary injunction entered below was granted on the merits and plaintiffs received the primary relief sought.

### B. Summary Judgment

The summary judgment which plaintiffs received was limited to a determination that the City ordinance was unconstitutional only as applied to *indoor* solicitation. However, Taylor concedes that plaintiffs did not specifically allege indoor solicitation; therefore, this summary judgment gave them no real relief. Moreover, the district court plainly stated that "review of the record shows no discrimination by the City in requiring permits for outdoor solicitation." 583 F.Supp. 514, 517. We are urged to deny plaintiffs prevailing party status on the basis of this statement.

■ The City contends that the partial summary judgment on indoor solicitation is not a favorable judgment on the central issue in the case. With this we agree. Further, the City argues that the district court's statement on outdoor solicitation is an adverse judgment on the application of the solicitation permit scheme and termi-

nates the effect of the preliminary injunction and any prevailing party status derived therefrom. With this we disagree.

■ Our cases do stand for the proposition that success on a minor or peripheral issue in a civil rights case will not support an award of attorney's fees. For example, in *Miami Herald Publishing Co. v. City of Hallandale*, 742 F.2d 590 (11th Cir.1984), the newspaper challenged a comprehensive licensing tax ordinance. The central issue in that case dealt with the Miami Herald's claim that it was unconstitutional to tax its publication under the first amendment. The district court ultimately ruled in the Miami Herald's favor only on a single non-tax-related provision. Having suffered an adverse judgment on the central issue in the case, this Court concluded that the Miami Herald was not a prevailing party and, therefore, not entitled to attorney's fees.

In *Wilson v. Attaway*, 757 F.2d 1227 (11th Cir.1985), although the plaintiffs were successful in challenging the constitutionality of the city charter, the constitutionality of that charter did not bear upon the constitutionality of an arrest by a county sheriff. Because the "central issue" of the litigation was a challenge to the arrest made by the sheriff, the *Wilson* court found that plaintiffs were not a "prevailing party" by reason of their singular success against one unrelated city charter provision. *Id.* at 1248.

■ The partial summary judgment entered below concerned indoor solicitation; it did not vindicate plaintiffs' position on the central issue in the case or provide plaintiffs with the desired relief. A "technical" ruling in one's favor does not make one a prevailing party if it does not grant significant substantive relief. "In the context of § 1988 there is no such thing as a 'technically prevailing plaintiff'; the issue of who has prevailed is a realistic judg-

ment, not a technical one." *Coen v. Harrison County School Board*, 638 F.2d 24, 26 (5th Cir.1981). *See Carbalan v. Vaughn*, 760 F.2d 662, 666 (5th Cir.1985) (plaintiff who prevails on judgment but obtains no relief whatsoever is not a prevailing party under the central issue test); *Robinson v. Kimbrough*, 652 F.2d 458, 466 (5th Cir. 1981) (plaintiffs cannot recover attorney's fees for judicial claims upon which they obtained no relief). Since the summary judgment concerned only indoor solicitation, this decision by the district court did not, by its own terms, yield relief to plaintiffs worthy of prevailing party status.

■ However, the entry of partial summary judgment only on indoor solicitation did not divest plaintiffs of the prevailing party status secured by the preliminary injunction entered against the application of Fort Lauderdale's solicitation permit ordinance to *both* indoor and outdoor solicitations. While the district court did make a statement that "the record shows no discrimination by the City in requiring permits for outdoor solicitation," 583 F.Supp at 517, no formal judgment was entered to that effect. A final judgment was entered only as to the unconstitutional application of the ordinance to indoor solicitation, the previously described "edifice complex" in the City's permit scheme. Since the plaintiffs had filed for declaratory as well as injunctive relief, we must read the district court's entry of a *partial* summary judgment as a decision that the application of the City's ordinance to outdoor solicitation was still an open question of law deserving further inquiry and scrutiny. The case became moot *not* when the district court entered its partial summary judgment but only after the City amended its ordinance. The partial summary judgment did not vitiate plaintiffs' earlier success in obtaining prevailing party status on the basis of the preliminary injunction.[9]

---

9. The dissent finds *Doe v. Busbee* dispositive on the question before us today. However, this view fails to credit the key distinction between *Busbee* and the case at bar. *Busbee* expressly stated that plaintiffs were denied prevailing party status "[b]ecause at no time were the civil rights of the plaintiffs being violated," 684 F.2d at 1383. The lower court had "erroneously entered injunctions" on plaintiffs' behalf. *Id.* This "mistake of law" by the district court meant "the State of Georgia had never been in violation of the law," so plaintiffs "had no right

## C. The "Catalyst" Test

▇▇▇▇ We note that a party may also be awarded attorney's fees as a prevailing party even if there is not a formal adjudication in the party's favor. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). This Circuit permits the award of attorney's fees to a "prevailing party" if the litigation "successfully terminates by a consent decree, an out-of-court settlement, a voluntary cessation of the unlawful practice by defendant, or other mooting of the case where the plaintiff has vindicated his right." *Doe v. Busbee,* 684 F.2d at 1379. Analysis hinges upon whether "the lawsuit is a substantial factor or a significant catalyst in motivating defendants to end their unconstitutional behavior." *Busbee,* 684 F.2d at 1380. *Robinson v. Kimbrough,* 652 F.2d 458, 466 (5th Cir.1981). *Fields v. City of Tarpon Springs,* supra, 721 F.2d at 321–22.

We need not consider whether Taylor's suit was a "catalyst" which motivated the City to repeal the solicitations permit ordi-

nance. Plaintiffs attained prevailing party status on the basis of expressly awarded judicial relief. The "catalyst" test is utilized primarily in the *absence* of formal judicial relief to determine if plaintiffs were successful. *Martin v. Heckler,* 773 F.2d 1145 (11th Cir.1985) (*en banc*). *See also Doe v. Busbee,* 684 F.2d at 1379. Of course, "mootness" does not retroactively divest plaintiffs of prevailing party status. *Doe v. Marshall,* 622 F.2d 118, 120 (5th Cir.1980). Plaintiffs do not require application of the "catalyst" test to achieve prevailing party status in the case before us today.[10]

## III

The preliminary injunction entered below was granted squarely on the merits. The plaintiffs were able to solicit donations in Fort Lauderdale without a permit and free from the threat of arrest. This Court is mindful of the congressional policy favoring the award of attorney's fees to plain-

---

to the relief sought and obtained." 684 F.2d 1381–82. Thus, prevailing party status was denied. In contrast, the injunction awarded the plaintiffs here was clearly consistent with, indeed compelled by, controlling first amendment jurisprudence. The City of Fort Lauderdale's solicitations ordinance was being unconstitutionally applied to members of the Unification Church. The partial summary judgment did not vitiate plaintiffs' success as considered in *Busbee* —there was no "mistake of law" here.

The dissent does not believe that plaintiffs' success on the preliminary injunction "survived" the summary judgment. While the district court's decision on April 5, 1984, found no evidence *in the record* supporting the entry of summary judgment on outdoor solicitation, our record on appeal shows that the parties engaged in settlement discussions on Count I during the next few months. In fact, on August 8, 1984, counsel for plaintiff commenced further discovery to flush out evidence on the City's solicitations permit process. Since plaintiffs had already received summary judgment on *indoor* solicitation, this discovery obviously was intended to augment the record on discrimination in *outdoor* solicitation, a matter not foreclosed by the district court's ruling. At this point, the preliminary injunction against enforcement of the City's solicitations permit scheme was still in force.

Moreover, on September 1, 1984, a full five months after the summary judgment ostensibly

ended the case, the City attorney informed counsel for plaintiff that the City Council was considering repeal of the ordinance in question. After discussing the matter with the City attorney, plaintiffs agreed via letter to wait for the City Council to act before they "either resume negotiations directed toward a settlement of this controversy or proceed with the litigation." On December 14, 1984, the City attorney forwarded a copy of the revised ordinance to plaintiffs *prior to* City Council consideration to see if plaintiff had "any questions regarding the proposed revisions." More than the language of the district court's order itself, the actions of the parties demonstrate that the partial summary judgment did not "vacate" plaintiffs' earlier success enjoining the City ordinance. Though the City's revision of its solicitations ordinance mooted plaintiffs' claim, it is clear that plaintiffs had a right to "the relief sought and obtained" and are prevailing parties as a consequence.

**10.** In any event, the express "exceptions" in the City's new ordinance, *see supra,* note 6, make it clear that there will be no disparate treatment of religious groups that seek to solicit donations in the City. The record supports at least an inference that this lawsuit was a substantial factor in motivating the City to amend its ordinance. However, we do not address this issue because we find that the preliminary injunction granted the plaintiffs express substantive relief worthy of prevailing party status.

tiffs who vindicate substantive rights in court. "There is no suggestion in the congressional history of 42 U.S.C. § 1988, nor in the cases that have applied it, that it ought to be read in a niggardly way." *Smith v. Thomas*, 687 F.2d 113, 116 (5th Cir.1982). We do not do so today. The injunction granted below properly safeguarded important First Amendment rights. Finding that this injunction was granted on the central substantive issue and yielded the practical relief sought by plaintiffs, we hold that plaintiffs were prevailing parties entitled to an award of attorney's fees under 42 U.S.C. § 1988. We remand this cause to the district court for a hearing and award of reasonable attorney's fees or an explanation of special circumstances rendering the award of such fees unjust.

REVERSED and REMANDED.

ANDERSON, Circuit Judge, dissenting:

I agree with the majority opinion that the "central issue presented by plaintiffs' complaint was that the solicitation permit requirements imposed upon the Unification Church in its outdoor solicitations were unconstitutional." I also agree that the preliminary injunction afforded relief to plaintiffs on this central issue. I also agree that the summary judgment later entered by the court, granting plaintiffs relief only as to *indoor* solicitation, did not constitute "a favorable judgment on the central issue in the case." At this point, my agreement with the majority opinion ends. I disagree with the majority's conclusion that the relief on the central issue of outdoor solicitation obtained by plaintiffs in the preliminary injunction somehow survives the entry of the later summary judgment. The majority reaches this conclusion notwithstanding the fact that the summary judgment opinion clearly rejected plaintiffs' claim for relief with respect to outdoor solicitation, holding that "the record shows no discrimination by the City in requiring

permits for outdoor solicitation." 538 F.Supp. 514, 517 (S.D.Fla.1984). Whether or not a formal judgment was entered to this effect, as a practical matter, it is clear that the relief obtained by plaintiffs in the preliminary injunction on the crucial issue in the case was vitiated upon entry of the later summary judgment. *Doe v. Busbee*, 684 F.2d 1375 (11th Cir.1982), squarely holds that a plaintiff is not a prevailing party when it obtains initial relief in the district court which is later vacated. In this case, just as in *Doe v. Busbee*, the initial relief obtained by plaintiffs on the crucial issue was vitiated by later court action. I disagree with the majority's conclusion that the instant case is distinguishable from *Doe v. Busbee*, because I disagree with the majority's conclusion that the initial relief obtained by plaintiffs in the preliminary judgment somehow survived the later summary judgment.[1]

With respect, I dissent.

---

**1.** Plaintiffs apparently conceded below that the amendment to the ordinance mooted the case. However, even if the instant suit were a catalyst motivating the amendment, the amended ordinance provided no relief with respect to the central issue of outdoor solicitation. The plaintiffs' concession may have been more in the nature of an abandonment.