**James DAVIS, Plaintiff,**

v.

**CITY OF ENNIS, Defendant.**

**Civ. A. No. CA–3–81–0405–G.**

United States District Court,
N. D. Texas,
Dallas Division.

Aug. 26, 1981.

Don A. Young, R. Bruce Connaway, Young & Connaway, Ennis, Tex., for plaintiff.

John Richard Wilson, McCarty & Wilson, Ennis, Tex., for defendant.

Before WILLIAMS, Circuit Judge, HIGGINBOTHAM and SANDERS, District Judges.

PER CURIAM:

### ORDER

This action arises out of an attempt by the City of Ennis ("Ennis") to replace the elected position of City Marshall with the appointed position of Chief of Police. Plaintiff James Davis ("Davis") contends that such a change, without preclearance or appropriate judicial review, is unenforceable under § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. This case having been mooted, the only remaining issue is whether Davis is entitled to attorney's fees pursuant to 42 U.S.C. § 1983/(e).[1]

### I.

On December 2, 1980, the Ennis City Commission called an election for January 17, 1981, at which a city charter amendment abolishing the elected position of City Marshall in favor of the appointed position of Chief of Police[2] would be submitted to a vote.[3] The amendment was adopted by a vote of 693 "for" to 691 "against." The election for City Marshall, which normally would have been held on April 4, 1981, was cancelled. The City Marshall left office the day his term expired, April 9, 1981.

On February 12, 1981, an action was filed in state court challenging the validity of the election at which the amendment had been adopted. A hearing was scheduled in that case for April 27, 1981. On March 12, 1981, Davis filed his action in this court alleging a violation of the Voting Rights Act of 1965 and requesting a declaratory judgment that the city charter amendment is unenforceable.

Soon after this action was filed, the parties conferred with the convening district judge. Ennis refused to concede that it was obligated to obtain preclearance by the Attorney General, but agreed to submit the amendment for preclearance. Its stated reason for submitting the amendment to the Attorney General was to expedite the preclearance review should this court rule in Davis' favor. It was anticipated that if this case were not mooted by the state court adjudication, this court would rule on the need for preclearance before the Attorney General issued his determination.

> In late March, the parties stipulated that:
> The Defendant, City of Ennis, hereby stipulates and agrees that until a hearing hereof or until further order of this Court it will not, without first seeking leave of this Court, appoint a Chief of Police pursuant to the City Charter Amendment in question. It is contemplated by the parties that the city manager or other current administrative positions will oversee the administration of the police department until further order of this Court and/or resolution of this litigation.

Proposed Pre-Trial Order of April 1, 1981, at page 3.

---

1. The section provides:
   In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

2. Since 1966, the City Marshall automatically has been appointed to the position of Chief of Police. In this Order, "City Marshall" refers to the elected office, while "Chief of Police" refers to the appointed office contemplated by the city charter amendment.

3. The decision to amend the charter apparently was precipitated by a 1979 Grand Jury Report critical of several officers of the Ennis Police Department.

Events after the stipulation left the Ennis Police Department without day-to-day supervision when the City Marshall's term expired on April 9th. The City Manager tendered his resignation, effective May 1, 1981, advising the City Commission that he would not accept responsibility for the operation of the Department in the interim. The Assistant City Manager, who presumably could have exercised control over the Department, also resigned, effective April 17, 1981. On April 15, 1981, Ennis filed a motion for authority *pendente lite* to appoint Wendell Dover, an officer to the Ennis Police Department, as an Administrative Assistant to the City Commission, with the authority to supervise the Department. The convening district judge conferred with the parties on April 15, 1981, at which time the stipulation was modified so that Dover could be employed in the capacity of Administrative Assistant. It was agreed by the parties that Department personnel were to be restored to their job titles, status, and shifts of April 9, 1981, and that no changes in job titles, status, and shifts, including the hiring, firing, demotion or promotion of any Department personnel, were to be made without prior approval by the court.

On May 13, 1981, the state court entered a final judgment ordering a new election on the city charter amendment to be held on May 16, 1981.[4] At the May 16th election, the amendment was defeated by a vote of 1366 "against" to 1010 "for." The Ennis City Commission then petitioned the Governor of Texas for an emergency special election day for the election of a new City Marshall. The petition was granted, and the election held in July of 1981.

On June 1, 1981, any and all operational restrictions of the Ennis Police Department to which Ennis had consented during the pendency of the suit were lifted. The United States Attorney General has advised Ennis that he will not review the city charter amendment, the issues having been mooted by the May 16th election.

4. A new election was ordered because five unqualified voters had voted in the January 17th election.

II.

At the outset, this court finds, and Davis does not dispute, that this action must be dismissed as moot. *See Ward v. Dearman*, 626 F.2d 489, 491–92 (5th Cir. 1980). Davis nevertheless is entitled to attorney's fees if he is a "prevailing party" in this action. In determining whether Davis is a "prevailing party," this court looks to case law construing 42 U.S.C. § 1973*l*(e), as well as judicial interpretations of that term in the context of the Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. *See Riddell v. National Democratic Party*, 624 F.2d 539, 543 (5th Cir. 1980) (§ 1973*l*(e) and § 1988 use similar language and should be construed similarly).

Ennis contends that Davis cannot be considered a "prevailing party" for the reason that his claims were mooted by developments wholly independent of his suit. Thus, Ennis argues, Davis has not "prevailed" because he has not obtained anything through this litigation that he could not have obtained simply by doing nothing. *See Ward v. Dearman, supra; Bly v. McLeod*, 605 F.2d 134 (4th Cir. 1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980); *cf., Coen v. Harrison County School Board*, 638 F.2d 24, 26 (5th Cir. 1981).

Davis argues that he prevailed here in two significant ways. First, Davis contends that he sought, and obtained through voluntary compliance, the primary objective of his suit—the submission of the city charter amendment to the United States Attorney General for preclearance. Second, although he received no adjudication on the merits, he claims to have prevailed in having successfully maintained the status quo (that is, to the extent that the status quo could be maintained once the City Marshall's term had expired).

Had this court adjudicated the merits of Davis' claim, and found the amendment to fall within 42 U.S.C. § 1973c, the city char-

ter amendment would have been unenforceable. *See United States v. Board of Supervisors*, 429 U.S. 642, 97 S.Ct. 833, 51 L.Ed.2d 106 (1977); *Connor v. Waller*, 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975). Ennis' options at that point would have been to abandon the amendment and return to the pre-amendment status quo; seek judicial review by the District Court for the District of Columbia; or, submit the amendment for preclearance. But because of the distinct possibility that this case would be mooted by the state court adjudication, this court deferred on ruling on the merits of the enforceability of the amendment. This deference was due, in part, to the voluntarily submission of the amendment for preclearance review (subject to this court's ultimate decision regarding Ennis' obligation to do so), and that Davis thus would not be prejudiced by any delay in such review should this court eventually rule in his favor.

█ It is well established that a plaintiff must have some success on the merits to be a "prevailing party." *See Hanrahan v. Hampton*, 446 U.S. 754, 756–59, 100 S.Ct. 1987, 1988–1990, 64 L.Ed.2d 670; *Lipscomb v. Wise*, 643 F.2d 319, 323 (5th Cir. 1981); *Swietlowich v. County of Bucks*, 620 F.2d 33, 34–35 (3d Cir. 1980). Such success can be by voluntary compliance. *See Brown v. Culpepper*, 559 F.2d 274, 277 (5th Cir. 1977). It is enough that the suit serves to vindicate plaintiff's rights. *See Williams v. City of Fairburn*, 640 F.2d 635, 636 (5th Cir. 1981); *Coen v. Harrison County School Board, supra*, 638 F.2d at 26. As long as plaintiff has by suit obtained the desired relief, he is not deprived of his status as a "prevailing party" by events that later moot his claim. *See Williams v. Alioto*, 625 F.2d 845, 847–48 (9th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981). But where, as here, plaintiff never obtains a court order in his favor that directly relates to the merits, he must show some causal connection between the suit and the events that moot his claim if he is to be considered to have "prevailed." *See Iranian Students*

*Association v. Sawyer*, 639 F.2d 1160, 1163 (5th Cir. 1981). In other words, absent a judicial finding on the merits, a plaintiff does not "prevail" on the basis of extraneous developments that give what was sought by filing his suit.

█ Davis never obtained any result on the merits of his claim, either by court order or by voluntary compliance. Ennis' submission of the amendment for preclearance was no implicit concession of liability or wrongdoing. It left Ennis free to insist upon its defense that the Act was inapplicable. Ennis did no more than attempt to expedite preclearance review should it eventually lose on the merits.[5] As for the events that mooted this suit, Davis has identified no causal connection between those events and this action, nor has he even suggested there might be such a connection.

The second way in which Davis contends he here prevailed, was by his successful maintenance of the pre-amendment status quo. That the status quo was maintained by stipulation rather than by judicial decree does not affect Davis' status as a "prevailing party." *See supra*. Davis did obtain interim relief in this suit; if he secured no other result, he at least prevented the appointment of a Chief of Police. But in determining whether Davis thereby succeeded on the merits, this court must look to the type of interim relief Davis obtained.

It is necessary to distinguish between two forms of interim or preliminary relief. On the one hand, interim relief can serve as, or be predicated upon, an adjudication on the merits. Thus, in *Williams v. Alioto, supra*, the district court entered a preliminary injunction enjoining certain police investigative procedures. Although defendants never had the opportunity to appeal the injunction because the case was mooted by the investigation's completion, *see* —— U.S. ——, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981) (dissent by Justices Rehnquist and White to denial of certiorari), the Court of Appeals, in awarding attorney's fees, noted that the

---

**5.** Ennis' desire to obtain as prompt a resolution as possible of the dispute was motivated by the fact that the City was without a City Marshall or Chief of Police after April 9, 1981.

district court had found the investigative procedures to be unconstitutional; plaintiffs had obtained a determination on the merits. 625 F.2d at 847–48. On the other hand, interim relief may be no more than a means for a court to mitigate or forestall injury until it can rule on the merits. This distinction was made plain in *Bly v. McLeod, supra,* in which the district court entered a temporary restraining order allowing plaintiffs to vote in a primary election. The case was soon thereafter mooted by legislative amendment. In denying plaintiffs their attorney's fees, the Court of Appeals observed that the TRO "was in no way a determination on the merits," but merely prevented irreparable harm. 605 F.2d at 137.[6]

The stipulation that Ennis would maintain the status quo *pendente lite* was not a concession of liability or wrongdoing by Ennis. Nor did it obviate the need for a judicial determination on the merits. The stipulation, and its subsequent modification, served the purpose of mitigating Davis' asserted injury pending final resolution of his claim. Once it became clear that the city charter amendment could not be enforced, whatever its validity under the Voting Rights Act of 1965, the stipulated ban was lifted. Thus, although the stipulation served the function of interim relief, it was interim relief similar to that of *Bly v. McLeod, supra,* rather than *Williams v. Alioto, supra.* More simply put, the stipulation did not go to the merits of Davis' claim, but only mitigated Davis' injury until a determination on the merits could be made. Davis, therefore, is not a "prevailing party" on the strength of the stipulation *pendente lite.*

For the stated reasons, this case is DISMISSED, and Davis' request for his attorney's fees is DENIED.

6. An analogous point was made by the Supreme Court in *Hanrahan v. Hampton, supra.* There, the Appeals Court awarded plaintiffs attorney's fees *pendente lite* for successfully appealing directed verdicts in favor of defendants, and remanded the case for trial. The Supreme Court held that plaintiffs were not "prevailing parties," even though the Court of

Appeals had found plaintiffs to have established a prima facie case. *See* 446 U.S. 766, 100 S.Ct. 1993 (dissent by Justice Marshall). The Court in *Hanrahan,* citing *Bly v. McLeod,* stressed the distinction between a procedural victory that affects the disposition on the merits and an actual adjudication on the merits. *Id.* at 758–59, 100 S.Ct. 1990.