CHURCH OF SCIENTOLOGY FLAG SERVICES ORG., INC., Plaintiff,

v.

CITY OF CLEARWATER, et al., Defendants.

No. 84–96–CIV–T–17.

United States District Court, M.D. Florida, Tampa Division.

July 2, 1991.

322

Eric M. Lieberman, Katherine Stone, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, Paul B. Johnson, Johnson, Paniello & Hayes, Tampa, Fla., for plaintiff.

Frank Kowalski, Chief Asst. City Atty., Dennis L. Repka, Sargent, Repka, Covert, Steen & Zimmet, P.A., Clearwater, Fla., for defendants.

## ORDER ON MOTIONS

KOVACHEVICH, District Judge.

This cause is before the Court on the following:

Dkt. 106 Order to show cause before 7/21/87 why this case should not be dismissed for lack of prosecution.

Dkt. 107 Response to the Court's order to show cause why this case should not be dismissed for failure to prosecute by Plaintiff.

Dkt. 108 Motion for attorneys' fees and costs by Plaintiff, filed October 19, 1987.

Dkt. 109 Memorandum of law in support of Plaintiff's motion for attorneys' fees and costs filed October 19, 1987.

Dkt. 110 Affidavit in support of Plaintiff's motion for attorneys' fees with Exhibits A–P attached by Eric M. Lieberman, filed October 19, 1987.

Dkt. 113 Memorandum in response to Plaintiff's application for attorneys' fees and costs by Defendants with Ex-

hibits filed under separate cover, filed November 19, 1987.

Dkt. 117 Reply memorandum in support of Plaintiff's application for attorneys' fees and costs by Johnson & Hayes, counsel for Plaintiff, filed December 16, 1987.

Dkt. 118 Supplemental memorandum of law in support of Plaintiff's application for attorneys' fees and costs by Plaintiff, filed July 14, 1989.

Dkt. 124 Defendants' reply to Plaintiff's supplemental memorandum seeking attorneys' fees for proceedings relating to Clearwater's initial ordinance, filed May 2, 1991.

## FACTS

1. On October 6, 1983, Defendant City of Clearwater (Clearwater) enacted Ordinance No. 3091–83, to become effective January 31, 1984. The purpose of the ordinance was to regulate charitable solicitations within the city. The ordinance required charitable organizations that wanted to solicit funds in Clearwater to register with the city, maintain specified records, disclose the sources and uses of their contributions, refrain from engaging in fraudulent solicitation practices and submit to an investigation by the City Attorney if ten or more individuals complained about the organization's activities. Clearwater patterned the ordinance after a similar Houston ordinance, upheld as constitutional by the Fifth Circuit Court of Appeals. *See International Society of Krishna Consciousness of Houston, Inc. [ISKCON] v. City of Houston,* 689 F.2d 541 (5th Cir. 1982).

2. On January 20, 1984, Americans United for Separation of Church and State (Americans United) brought a ten-count action in the Federal District Court of the Middle District of Florida (the Court) to enjoin Clearwater from enforcing the ordinance. Each count raised a discrete constitutional claim.

3. On January 23, Plaintiff Church of Scientology Flag Services Organization, Inc. (Scientology) brought a separate twelve-count action for injunctive relief on similar constitutional grounds. Both Plaintiffs moved for temporary restraining orders pursuant to Rule 65(b), Federal Rules of Civil Procedure. Scientology's case number was 84–96–Civ–T–17 (hereinafter 84–96).

The Court, pursuant to Rule 65(a)(2), Federal Rules of Civil Procedures, consolidated the parties' motions for injunctive relief with the trial on the merits, and scheduled a hearing on the issue of a permanent injunction. At the hearing, the parties requested the Court to limit the scope of the hearing to the facial validity of the ordinance. Clearwater stated that it would not challenge Scientology's standing, except as to the claims alleging that the ordinance violated the freedom of religion clauses of the first amendment. After argument on the facial validity of the ordinance, the Court directed counsel to file post-hearing Memoranda by March 16.

4. On March 15, Clearwater enacted Emergency Ordinance No. 3479–84, as an amendment to Ordinance No. 3091–83. Like Ordinance No. 3091–83, the amended ordinance comprehensively regulated charitable solicitation and effectively repealed Ordinance No. 3091–83. As an emergency ordinance, No. 3479–84 would automatically expire after 90 days if not passed as a non-emergency ordinance within that time. In addition, Ordinance No. 3479–84 explicitly provided for its expiration in 90 days. Clearwater notified the Court and Plaintiffs of the amended ordinance.

5. On March 28, the Court determined that repealed Ordinance No. 3091–83 was unconstitutional and permanently enjoined its application and enforcement. The Court did not specify which of the several counts of the Plaintiffs' complaints it was deciding. The Court terminated the Americans United case and dismissed all but one count of Scientology's complaint in 84–96, retaining jurisdiction for the enforcement of the executory provisions of its order.

6. On April 5, Clearwater appealed the District Court's injunctive orders as to Ordinance No. 3091–83, pursuant to 28 U.S.C. § 1292(a)(1) (1982). Section 1292 provides that Courts of Appeals have jurisdiction

over appeals from interlocutory orders of the District Court's granting or refusing to grant injunctions.

7. On April 20, Scientology, seeking to enjoin the enforcement of Emergency Ordinance No. 3479–84, moved the District Court for leave to amend the remaining count of its 84–96 complaint. The proposed amendment set out the same constitutional challenges that Scientology had raised in opposition to the original ordinance. At the same time, Scientology moved the Court for a temporary restraining order prohibiting Clearwater from enforcing Ordinance No. 3479–84.

8. On May 17, Clearwater enacted Ordinance No. 3479–84 as a permanent ordinance.

9. On May 21, Americans United filed a new action in the District Court seeking injunctive relief and challenging the constitutionality of Ordinance No. 3479–84 on the grounds raised in its previous suit. Simultaneously, Americans United moved for a temporary restraining order, which the Court granted.

10. On May 24, Scientology filed a new suit, seeking essentially the same relief as Americans United. The Case was given the number 84–719–Civ–T–17 (hereinafter 84–719). Scientology's action asked for declaratory and injunctive relief. Scientology contended that:

A) The amended ordinance was enacted to single out Scientology for harassment and persecution in violation of the establishment and free exercise clauses of the first amendment and the equal protection and due process clauses of the fourteenth amendment;

B) On its face and as applied to all religious groups, the amended ordinance violates the first, fourth, fifth and ninth amendments of the United States Constitution; sections 2, 3, 4, 5, 9, 17, and 23 of Article I of the Florida Constitution; Florida Statutes § 166.04(a); and Clearwater City Charter § 2.09. Scientology alleges that the case arises under 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202.

11. At this point, Scientology had two identical suits pending, 84–719 and 84–96. The two Scientology cases and the American United case challenging amended Ordinance No. 3479–84 were not consolidated by the District Court.

12. On July 13, the District Court heard argument of Americans United and Scientology counsel at a scheduled hearing limited to the question of the facial constitutionality of Ordinance No. 3479–84 in the abstract. The Court did not consider the merits of any of the pending motions or receive any evidence. The Court found that Ordinance No. 3479–84 was facially constitutional. However, the Court encouraged an immediate interlocutory appeal to the Eleventh Circuit Court of Appeals, pursuant to 28 U.S.C. § 1292(b) (1982). The Court also issued a temporary restraining order enjoining Clearwater from enforcing the ordinance pending the disposition of any appeals that might be taken. In its written orders, the Court converted its temporary restraining orders to preliminary injunctions prohibiting Clearwater from enforcing the portions of Ordinance No. 3479–84 that dealt with a charitable organization's obligation to register with the city and to maintain certain records.

13. On July 31, Scientology moved the District Court, in both of its cases, 84–719 and 84–96, for temporary restraining orders prohibiting Clearwater from enforcing *all* provisions of the Ordinance No. 3479–84. Scientology also moved the Court to schedule an evidentiary hearing on its pending application for a preliminary injunction.

14. On August 2, the Court denied Scientology's motion for a temporary restraining order prohibiting Clearwater from enforcing Ordinance No. 3479–84 and denied Scientology's motion for a hearing on its application for a preliminary injunction.

15. On August 3, Scientology appealed the District Court's July 23 orders declaring Ordinance 3479–84 constitutional and enjoining the enforcement of less than all of Ordinance No. 3479–84. Scientology also appealed the District Court's August 2

order denying Scientology's motion for a temporary restraining order and a preliminary injunction.

16. On November 1, the Eleventh Circuit Court of Appeals

A) vacated the District Court's order prohibiting Clearwater from enforcing repealed Ordinance No. 3091–83 because the controversy was moot; the Eleventh Circuit remanded the two cases with instructions that they be dismissed without prejudice;

B) dismissed the section 1292(b) interlocutory appeals from the District Court's determination that amended Ordinance No. 3479–84 was facially constitutional; the Eleventh Circuit vacated the orders that allowed the appeals to proceed;

C) affirmed the District Court's refusal to grant Scientology's applications for preliminary injunctions because Scientology failed to establish the criteria necessary for preliminary injunctive relief. The Eleventh Circuit also found that the District Court record did not support an adequate basis to justify a finding of standing.

17. On July 7, 1987, the Court issued an order to show cause before July 21, 1987 why 84–96 should not be dismissed for lack of prosecution.

18. On July 23, Scientology, in 84–719, filed a motion for partial summary judgment on the issue of standing, and on January 15, 1988, in the same case, filed a partial summary judgment on standing and the merits.

19. On October 19, Scientology filed a motion for attorneys' fees and costs in 84–96. Clearwater filed memoranda in opposition to the award of attorneys' fees and costs.

20. On January 15, 1988, Clearwater filed a motion for summary judgment in 84–719.

21. On February 4, 1991, the Court granted Scientology's motion for partial summary judgment against Clearwater on the issue of standing in 84–719, and granted Clearwater's motion for partial summary judgment against Scientology on all issues other than standing in 84–719. 756

F.Supp. 1498. The Court held that all sections of Ordinance No. 3479–84 are constitutional. A summary of Ordinance No. 3479–84 appears in Appendix A.

The Court dismisses this case, with prejudice, and denies Plaintiff's motion for attorneys' fees and costs under 42 U.S.C. § 1988. Title 42 U.S.C. § 1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The question here is whether Scientology is a prevailing party. The Court finds that Scientology is not a prevailing party for the following reasons: 1) the lawsuit did not result in the vindication of Scientology's rights; 2) the lawsuit did not result in the cessation of Clearwater's challenged behavior; and, 3) the lawsuit did not cause a material alteration in the legal relationship of the parties. Because the Court determined that Scientology is not a prevailing party, the Court did not consider whether special circumstances would prevent the award of attorneys' fees, or whether the requested fees were excessive. The Court's reasoning is set out below.

## I. DISMISSAL

This case was administratively closed July 23, 1984, pending completion of interlocutory appeals. The Eleventh Circuit Court of Appeals dismissed those interlocutory appeals on November 13, 1985. No further action was taken in the case until the District Court entered its order to show cause why the case should not be dismissed for failure to prosecute on July 7, 1987.

Scientology litigated its identical claims in 84–719 and the Court granted summary judgment in favor of Clearwater. Scientology is now appealing that decision. Dismissing this case will not foreclose or adversely affect Scientology's litigation of its claims in 84–719. Dismissing the case will promote judicial economy, however. Therefore, the Court dismisses this case, with prejudice.

## II. ATTORNEYS' FEES

### A. Attorneys' Fees Under 42 U.S.C. § 1988

Title 42 U.S.C. § 1988 provides that in federal civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R.Rep. No. 94–1558, p. 1 (1976). A prevailing plaintiff " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " S.Rep. No. 94–1011, p. 4 (1976) (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). The fee amount must be determined on the facts of each case. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) (twelve factors for determining fee amount). *Johnson* indicates that the level of a plaintiff's success is relevant to the amount of fees awarded.

A plaintiff must be a "prevailing party" to recover under § 1988. The standard requires that parties succeed on "any significant issue in the litigation which achieves some of the benefit they sought in bringing the suit." *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978), quoted in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). "Under that standard, at a minimum, the plaintiff must be able to point to a resolution of the dispute which materially alters the parties' legal relationship in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Association, et al. v. Garland Independent School District, et al.*, 489 U.S. 782, 783, 109 S.Ct. 1486, 1488, 103 L.Ed.2d 866 (1989) (citing *Hewitt v. Helms*, 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987)). A plaintiff must "receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt*, 482 U.S. at 760, 107 S.Ct. at 2675.

Where the plaintiff's success on a legal claim can be characterized as purely technical or de minimis, a district court would be justified in concluding that even the 'generous formulation' we adopt today has not been satisfied ... The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award vel non (citations omitted).

*Texas State Teachers*, 489 U.S. at 792–93, 109 S.Ct. at 1493. One of Congress' goals in enacting § 1988 was to encourage individuals to assume the role of "private attorney general." *Id.* at 793, 109 S.Ct. at 1494.

When a plaintiff wins a preliminary injunction against enforcement of an ordinance's provisions, and the ordinance is later repealed, a plaintiff is a prevailing party. *Taylor v. Fort Lauderdale*, 810 F.2d 1551 (11th Cir.1987). However, when an ordinance has been repealed prior to the Court's issuance of a preliminary injunction, the controversy is moot. *Church of Scientology Flag Service Organization v. City of Clearwater*, 777 F.2d 598, 605, 608 (11th Cir.1985). A temporary court order granted in violation of law and reversed on appeal does not make a plaintiff a prevailing party. A plaintiff cannot be a prevailing party if plaintiff has no right to the relief obtained. *Doe v. Busbee*, 684 F.2d 1375, 1380 (11th Cir.1982).

"This Circuit permits the award of attorney's fees to a 'prevailing party' if the litigation 'successfully terminates by a consent decree, an out-of-court settlement, a voluntary cessation of the unlawful practice by defendant, or other mooting of the case where the plaintiff has vindicated his right.' " *Taylor v. City of Fort Lauderdale*, 810 F.2d at 1560 (citing *Doe v. Busbee*, 684 F.2d at 1379). "Analysis hinges upon whether 'the lawsuit is a substantial factor or a significant catalyst in motivating defendants to end their unconstitutional behavior.' " *Taylor v. City of Fort Lauderdale*, 810 F.2d at 1560 (citing *Doe*

*v. Busbee,* 684 F.2d at 1380). "A party can achieve 'prevailing party' status by establishing a 'clear *causal relationship* between the litigation brought and the practical outcome realized.'" *Ward v. County of San Diego,* 791 F.2d 1329, 1334 (9th Cir.1986) (citing *Rutherford v. Pitchess,* 713 F.2d 1416, 1419 (9th Cir.1983)). *See also, Robinson v. Kimbrough,* 652 F.2d 458, 466 (5th Cir.1981), withdrawing and vacating 620 F.2d 468 (5th Cir.1980) (catalyst exists where lawsuit was "a substantial factor or a significant catalyst in motivating the defendants to end their [challenged] behavior.")

■ Even if a Plaintiff can demonstrate a clear causal link between a lawsuit and a Defendant's resulting conduct, a Plaintiff does not prevail if Plaintiff does not benefit from the conduct. *Hewitt v. Helms,* 482 U.S. at 760, 107 S.Ct. at 2675. *See also, Casines v. Murchek,* 766 F.2d 1494, 1503 (11th Cir.1985) (consistent with the policy underlying section 1988, Plaintiff must in some way vindicate a civil right at issue in the litigation against the violator of that civil right in order to be considered a prevailing party.)

## III. THE PARTIES' CONTENTIONS

■ Scientology contends that it is entitled to attorneys' fees because the District Court declared repealed Ordinance No. 3091–83 unconstitutional and issued a preliminary injunction enjoining its enforcement. Scientology claims that *Taylor v. Fort Lauderdale,* 810 F.2d 1551 mandates that attorneys' fees be awarded in the present case. In *Taylor,* Fort Lauderdale adopted a charitable solicitation ordinance regulating indoor and outdoor solicitation. A minority religious group alleged that the ordinance was unconstitutional on its face and as applied. Plaintiffs won a preliminary injunction against enforcement of the ordinance's provisions.

The *Taylor* Court then granted Plaintiff's motion for summary judgment with respect to the part of the ordinance dealing with indoor solicitation, intimating that there was no discriminatory application of the outdoor solicitation requirements. The *Taylor* Court did not rule on the latter issue, however. Defendant Fort Lauderdale subsequently repealed the ordinance and enacted a new ordinance. Plaintiffs did not challenge the amended ordinance.

The *Taylor* Court denied Plaintiff's subsequent application for attorneys' fees, but on appeal, the Eleventh Circuit Court of Appeals reversed. The appellate Court stated that Plaintiff's success on the preliminary injunction made it a prevailing party entitled to attorneys' fees and that the subsequent mooting of the case by the recision of the ordinance did not vitiate that success. Scientology compares the facts in *Taylor* to those in the present case and concludes that they are similar. Therefore, Scientology argues, attorneys' fees should be awarded in the present case.

Clearwater argues that Scientology could not be the prevailing party because the order Scientology relied on to claim prevailing party status was vacated by the Eleventh Circuit. Clearwater points out that the Eleventh Circuit held that the preliminary injunction should not have been entered because the case was moot at the time of entry and Scientology had not submitted facts establishing standing to challenge the ordinance. Defendants' Memorandum in Response to Plaintiff's Application for Attorney's Fees and Costs [hereinafter Defendants' Response Memo], pp. 3–4.

Clearwater cites *Doe v. Busbee,* 684 F.2d 1375, and argues that a temporary District Court victory that is granted in violation of law and is reversed on appeal does not make the plaintiff a prevailing party. Clearwater points out that, in *Doe v. Busbee,* the plaintiff obtained preliminary and permanent injunctive and declaratory relief in the District Court. While the District Court's orders were on appeal, the Supreme Court issued two decisions that undercut the lower Court's opinion. On remand, the District Court vacated its final judgment and dismissed the Plaintiff's complaint. However, the District Court refused to vacate its prior award of attorneys' fees, stating the Plaintiffs had ob-

tained substantial relief while the injunctions were in effect.

The Eleventh Circuit reversed. After studying the purposes of § 1988, the Circuit Court held that the Plaintiffs were not prevailing parties because "Their successes were merely temporary, and any benefit flowing from their successes in the District Court was awarded under a mistake of law." *Id.* at 1380. Having had no right to the relief obtained, the Plaintiffs were not prevailing parties. *Id.* at 1382.

Clearwater also cites a Ninth Circuit decision, *Ward v. County of San Diego*, 791 F.2d 1329, in which the Circuit Court affirmed a denial of a request for attorneys' fees. The Ninth Circuit held that the Plaintiff's

lack of standing in her original challenge rendered illusory the practical outcome she temporarily received (the preliminary injunction) ... An erroneously granted injunction cannot be the basis for an award of attorney fees as the prevailing party.

*Id.* at 1334.

The Court rejects Scientology's claim that *Taylor v. Fort Lauderdale* mandates an award of attorneys' fees in this case. The Court distinguishes *Taylor* on the facts. In *Taylor*, the ordinance was in effect when the District Court granted a preliminary injunction. In the present case, Ordinance No. 3091–83 was not in effect when the District Court declared the ordinance unconstitutional and granted the injunction. *Church of Scientology Flag Service Organization, Inc. v. City of Clearwater*, 777 F.2d at 601. As the Eleventh Circuit Court of Appeals pointed out, "Ordinance No. 3091–83 was no longer in force when the District Court declared it unconstitutional. 'Where by ... a subsequent law, the existing controversy has come to an end, the case becomes moot and should be treated accordingly.'" *Id.* at 605.

The Court also distinguishes *Taylor* by the number of complaints the Plaintiff filed. Plaintiff Taylor filed only one complaint against the original ordinance. Taylor neither continued his original suit against the amended ordinance, nor did he file a new complaint against the amended ordinance. Scientology did both. Scientology, unlike Taylor, amended its original complaint and continued its original suit against the amended ordinance and in addition, filed a new suit alleging identical claims of unconstitutionality against the amended ordinance. Because the facts in *Taylor* differ from the facts in the present case, the Court finds that *Taylor* does not mandate the award of attorneys' fees.

### Vindication of Scientology's Rights and Cessation of Clearwater's Challenged Behavior

■ Next, Scientology claims prevailing party status because Clearwater conceded the unconstitutionality of Ordinance No. 3091–83 and adopted amended Ordinance No. 3479–84 in response to Scientology's arguments. Memorandum in Support of Plaintiff's Application for Attorney's Fees and Costs, [hereinafter Plaintiff's Support Memo] pp. 1, 5, 6. Scientology argues that "A judgment is not a prerequisite for a fee award, and a party prevails where there is voluntary cessation of the unlawful practice by the defendant, or other mooting of the case where the plaintiff has vindicated his right." *Doe v. Busbee*, 684 F.2d at 1379. Scientology argues that Clearwater amended the original Ordinance No. 3091–83 in direct response to its lawsuit and claims that "Where a lawsuit has been the catalyst to obtain voluntary relief against a defendant, fees must be awarded." Plaintiff's Support Memo, p. 10 Scientology cites *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Martin v. Heckler*, 773 F.2d 1145 (11th Cir.1985); *Doe v. Busbee*, 684 F.2d 1375; *Iranian Students Association v. Sawyer*, 639 F.2d 1160 (11th Cir.1981); *Dayan v. Board of Regents*, 620 F.2d 107 (5th Cir.1980).

The Court rejects Scientology's claim that attorneys' fees should be awarded because Scientology's lawsuit was a catalyst in the District Court's declaring Ordinance No. 3091–83 unconstitutional. Regardless of the role Scientology played in the Court's decision, if the decision did not

vindicate Scientology's rights, and motivate Clearwater to end its challenged behavior, Scientology is not entitled to attorneys' fees. *Taylor v. City of Fort Lauderdale,* 810 F.2d at 1560 (citing *Doe v. Busbee,* 684 F.2d at 1375, 1379, 1380). *See also Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654; *Casines v. Murchek,* 766 F.2d 1494.

The Court finds that Scientology's rights were not vindicated as a result of its lawsuit against Ordinance No. 3091–83. The evidence for this finding is the fact that Scientology filed suit against amended Ordinance No. 3479–84 alleging claims almost identical to those it alleged against Ordinance No. 3091–83. Further evidence of this finding is the fact that the parties' legal relationship was not materially altered by the lawsuit. (See section below on the "No Material Alteration of the Legal Relationships of the Parties.")

In addition, Clearwater did not end its challenged behavior as a result of Scientology's lawsuit against Ordinance No. 3091–83. Clearwater adopted Ordinance No. 3479–84 immediately. In a Prehearing Memorandum, Scientology argued, "that in dispositive respects the new ordinance was the same as or even worse than the old one: 'While the new ordinance differs in some respects from its predecessor, what is significant are the ways in which the new ordinance is similar or identical to the very aspect of the old Ordinance which caused this Court to rule it unconstitutional.'" Defendants' Response Memo, p. 9.

In the Eleventh Circuit, Scientology told the Court that the amendments did not "truly remove[e] the constitutional infirmities" of the initial ordinance. And in a July 21, 1987 brief to this Court urging that its first case not be dismissed, Scientology said the claims it raised in its second complaint are "identical to those raised in its first. Defendants' Response Memo, p. 10, citing Response of Plaintiff Church to the Court's Order To Show Cause, p. 7. The Court finds that Scientology's argument that it is a prevailing party because its lawsuit was a catalyst in the District Court's action declaring Ordinance No.

3091–83 unconstitutional is not persuasive because Scientology did not vindicate its rights by the lawsuit, nor did Clearwater discontinue the challenged behavior.

### No Material Alteration of the Parties' Legal Relationship

■ Scientology claims that it is a prevailing party because it prevailed on significant issues in the litigation that achieved some benefit it sought in bringing the suit. Scientology points out that, after *Texas State Teachers,* prevailing parties no longer have to prevail on the central issue of a case to receive attorneys' fees, but only on "any significant issue in the litigation which achieves some of the benefit they sought in bringing the suit." *Nadeau v. Helgemoe,* 581 F.2d at 278–79, quoted in *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939. "Under that standard, at a minimum, the plaintiff must be able to point to a resolution of the dispute which materially alters the parties' legal relationship in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Association, et al. v. Garland Independent School District, et al.,* 489 U.S. at 783, 109 S.Ct. at 1488 (citing *Hewitt v. Helms,* 482 U.S. at 760–61, 107 S.Ct. at 2675–76).

In *Texas State Teachers,* Petitioner teachers and teacher organizations sued the school district for the district's regulations prohibiting employee organizations access to school facilities during school hours, prohibiting teachers from communicating among themselves about employee organizations during school hours, prohibiting the use of school mail and internal communications systems by employee organizations, and requiring the district's permission for on-premises, after hours meetings between teachers and employee organizations. On cross-motions for summary judgment the District Court rejected all of Plaintiff's claims except the last one.

On appeal, the Fifth Circuit agreed with the District Court that the prohibition on employee organizations' access to school premises during school hours was not unconstitutional, and affirmed the grant of

summary judgment to the school district on this claim. *Texas State Teachers Association v. Garland Independent School District*, 777 F.2d 1046 (5th Cir.1985). But the Fifth Circuit found for the teachers on the issues of teacher-to-teacher discussion of employee organizations and the use of internal mail and bulletin boards for such communication. The Supreme Court summarily affirmed. *Texas State Teachers*, 479 U.S. 801, 107 S.Ct. 41, 93 L.Ed.2d 4.

The teachers then filed an application for attorneys' fees. The District Court recognized that the teachers had achieved partial success, but concluded that they were not prevailing parties under the central issue/primary relief test in use in the Fifth and Eleventh Circuits. The District Court denied attorneys' fees and the Fifth Circuit affirmed. *Texas State Teachers Association v. Garland Independent School District*, 837 F.2d 190 (5th Cir.1988). However, the Supreme Court rejected the central issue/prevailing party threshold test for attorneys' fees' eligibility. Instead, the Court ruled that the threshold test was whether the lawsuit led to "the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers*, 489 U.S. at 792, 109 S.Ct. at 1493.

Scientology claims that it prevailed on two significant issues that materially altered the parties' legal relationship. The first issue was the elimination of the definition of "member" from Ordinance No. 3479–84. The definition, found at Section 100.01(5) of Ordinance No. 3091–83 read, "The term, 'member' shall mean any person regularly attending or participating in a charitable organization." Scientology claims that the definition of member in the original ordinance meant that the ordinance discriminated between Scientology and religions that were more established. Plaintiff's Supplemental Memo, p. 2.

The second issue was the change in the manner in which city officials determined the propriety of investigating complaints against a charitable organization between Ordinance No. 3091–83 and 3479–84.

Scientology claimed that Provision 100.06 in Ordinance No. 3091–83 gave officials "unbridled discretion," to investigate a religion's charitable solicitation practices. Plaintiff's Supplemental Memo, p. 6.

Section 100.06 is set out below. The lined-out portions appeared in Ordinance No. 3091–83. The underlined portions were added in Ordinance No. 3479–84.

Section 100.06. Power of the City Attorney to Investigate and Prosecute Prohibited Acts of Charitable Organizations.

1. The City Attorney ~~may~~ shall investigate ~~the solicitation of funds by charitable organizations~~ *alleged violations of this chapter* only after ten individuals file separate bona fide complaints in writing, sworn to or affirmed, with the City Attorney, setting forth facts demonstrating that one or more of the prohibited acts set forth in Section 100.05 have been engaged in by the charitable organization and that the complaining party has been injured by each act or acts.

2. ~~For purposes of investigating complaints under this section, the City Attorney shall have the power to apply to a court of competent jurisdiction for a subpoena or subpoena duces tecum to bring before him or her any person and to require as part of such subpoena the production of relevant documents and records and to administer oaths and take depositions of any such person so subpoenaed. The City Attorney shall have the power to effect service of process of subpoenas; after approval of such subpoena by a court of competent jurisdiction. The willful failure of a person without lawful excuse to obey a subpoena or subpoena duces tecum shall constitute a prohibited act under this chapter. This provision does not preempt or supersede any other general laws concerning a refusal to obey a valid subpoena.~~ *The City Attorney, when conducting an investigation pursuant to subparagraph 1 shall have the power to subpoena any person, require the production of the records or documents described in Section 100.04 and the private statement and records or documents described in*

*Section 100.01(3), and administer oaths.*

~~3. In investigating citizen complaints about a charitable organization's solicitation of funds, the City Attorney shall have access to the public records filed by the organization with the City Clerk.~~

4. *3.* ~~The City Attorney may commence and maintain in a court of competent jurisdiction all roper and necessary actions and proceedings to prosecute any act prohibited by this chapter.~~ *If the investigation conducted under subparagraph 1 demonstrates that probable cause exists to believe that a violation or violations under Section 100.05 exist, then the City Attorney shall institute an action to prosecute such violation or violations.*

Clearwater argues that the eliminations and alterations cited by Scientology made Scientology's position worse than it was before the changes were made. Clearwater explains that the deletion of the definition of "member" meant that Ordinance No. 3479–84 applied to Scientology's solicitation from its own members. Clearwater points out that Ordinance No. 3091–83, containing the definition, had not applied to organizations' solicitation from their own members.

Clearwater points to the fact that now, after the definition of "member" was eliminated, Scientology claims that Ordinance No. 3479–84 is unconstitutionally overbroad and violates Plaintiff's first amendment rights *because* the ordinance regulates fundraising by churches from their own members and on their own premises. Clearwater argues that Scientology could not have prevailed on the membership issue because Scientology continues to allege that the membership provision is unconstitutional.

Further, Clearwater claims that Scientology is in a worse position after the changes regarding the City Attorney's power to issue subpoenas. Clearwater explains that Ordinance No. 3091–83 required the City Attorney to apply to a court for authority to issue subpoenas for documents; however, Ordinance No. 3479–84 contains no

such requirement. The City Attorney can issue subpoenas without applying to the Court. In addition, Clearwater states, the City Attorney is *required* to investigate if he receives ten bona fide complaints about a group under Ordinance No. 3479–84. Under Ordinance No. 3091–83, the City Attorney did not have to investigate.

Clearwater further points out that Scientology continues to claim that the ordinance unconstitutionally vests excessive and vaguely defined discretion in city enforcement officials. Clearwater points out that Scientology said that enforcement provisions of the new law, and the City Attorney's investigatory powers under the new law, were 'substantially identical' to those included in the prior ordinance and that in the amended law 'The regulation of solicitation of members … is accomplished by a far more pernicious method' than formerly. Defendants' Response Memo, p. 9, citing Prehearing Memorandum, pp. 10, 13.

Therefore, Clearwater contends, Scientology did not prevail on significant issues that achieved some of the benefit they sought in bringing suit by deleting the definition of member and altering the provision regarding the discretionary power of city officials. Further, Clearwater argues, Scientology did not reach the threshold test for attorneys' fees set out in *Texas State Teachers* because Scientology's lawsuit, and the changes described above did not materially alter the parties' legal relationship. Clearwater claims that Scientology's actions and representations demonstrate that it is not a prevailing party because Scientology raised all of the same claims in its complaint against amended Ordinance No. 3479–84 that it had raised in its complaint against Ordinance No. 3091–83.

The Court finds unpersuasive Scientology's argument that the changes in the provisions above materially altered the parties' legal relationship. The Court measured the extent of the alteration in the legal relationship by comparing Scientology's allegations as to the membership provisions in Ordinance No. 3091–83 with its allegations as to the membership provisions in Ordinance No. 3479–84. Scientology ar-

gued about the membership provisions in Ordinance No. 3091–83:

> In the present case, the Ordinance on its face has a similar disparate effect as did the membership exemption in the *Larson* case, and cannot be justified by a compelling interest.
>
> Most important is the limited membership exemption created by the Ordinance, which exempts from the scope of the Ordinance organizations where "the solicitation is in the form of a donation or collection that occurred within the membership ..." Section 100.01(1). This exemption, however, is significantly narrowed by the definition of "member" as "any person regularly attending or participating in a charitable organization." Section 100.01(5). Thus, only churches which limit their solicitation to those who regularly attend or participate in church services remain exempt. Churches which obtain contributions from members who participate in church services on an episodic basis, as well as church which do not offer, encourage, or require "regular" attendance or "regular" participation of their members, whatever that means are singled out for differential treatment ... The Ordinance is Unconstitutional because it seeks to regulate relations between a church and its members. The Ordinance applies, by its terms, to solicitations by a church of its own members for the general fund-raising purposes of the church, except if the church solicits only from members who regularly attend or participate in church services or activities.

Plaintiff's Prehearing Memorandum of Law [hereinafter Plaintiff's Prehearing Memo], pp. 6, 10.

Scientology argued, about the membership provisions in Ordinance No. 3479–84:

> The Ordinance attempts to regulate solicitations by churches of their own members for the general fundraising purposes of such churches, to regulate relations between churches and their members by compelling disclosure of confidential financial data to members upon request, and to foment dissent within the membership of churches by empowering any individual member to compel disclosure of confidential data.

Complaint, Case 84–719, p. 43.

The similarity of Scientology's objection to the membership provision in Ordinance No. 3479–84 convinces the Court that any alteration in the legal relationship of the party caused by deleting the definition of member was de minimis at best. Therefore, Scientology's claim that it is a prevailing party because the definition of member was deleted is not persuasive.

Likewise, Scientology's argument that it is a prevailing party because changes were made in the city authority's power to investigate is also unpersuasive. Scientology argued about Ordinance No. 3091–83:

> The Clearwater Ordinance is fatally vague in two respects. First, it vests unlimited discretion in the City Attorney for its enforcement, in the following ways:
>
> (1) Under Section 100.06(1), the City Attorney "may," but need not, investigate an organization against which ten complaints have been filed. No standards are set forth to govern the City Attorney's decision whether to investigate.
>
> (2) Similarly, under Section 100.06(4), the City Attorney "May," but need not, institute legal proceedings to prosecute a violation of the Ordinance. No standards are set forth to govern the City Attorney's decision whether to prosecute.
>
> (3) Under Section 100.06(2), the City Attorney may subpoena "any person" and require the "production of relevant documents and records." No standards are established to govern the exercise of this discretionary authority.
>
> (4) Under Section 100.03(2), the City Clerk is empowered to determine the sufficiency of a registration statement and, presumably, to issue a Certificate of Registration. Under Section 100.03(3), the City Clerk can refuse to issue a Certificate of Registration if there is a "compelling and substantial government interest" to justify the denial of a certificate. Any under Section 100.04(2), the City

Clerk may determine whether any organization's recordkeeping is insufficient, and may declare a "default" upon such a finding. No standards are established to govern the City Clerk in making these determination, and no explanation is given as to the meaning or consequences of a "default."

(5) Under Section 100.05(1)(b), the City Attorney is empowered to determine the truthfulness and/or sufficiency of a registration statement, and to seek criminal and civil penalties for the filing of an untruthful or insufficient statement. No standards are provided for the exercise of this extraordinary censorship authority.

Such broad discretion permits, indeed invites, the City Attorney and the City Clerk to engage in selective and discriminatory enforcement, and provides insufficient standards against which his conduct may be measured.

Plaintiff's Prehearing Memo, pp. 28, 29.

Scientology argued, about Ordinance No. 3479–84:

The City Attorney's power to investigate and prosecute Section 10.05(1)(c) of the Ordinance (which prohibits the "use of any scheme or artifice to defraud or obtain property by means of any false statement or representation") provides another example of the Ordinance's unconstitutional infringement on the relationship between churches and their members ... the primary vice of the Ordinance lies in the broad and undefined discretion it vests in its enforcing officials. The Clearwater Ordinance confers excessive authority on the Clearwater officials, thereby allowing them not only to engage in selective and discriminatory enforcement, but also to interfere with protected activities in several significant respects.

First, pursuant to section 100.03(2) of the Ordinance and Section 100.05(1)(b), the City Clerk and City Attorney, respectively, are given the authority not only to determine the sufficiency of registration statement, but in the case of the City

Attorney, the trust or falsity of information contained there.

Second, pursuant to Section 100.06, the City Attorney is given extraordinarily broad powers to investigate and prosecute violations of the Ordinance, including by use of subpoenas to compel the production of persons or documents, and by the institution of legal proceedings.

Plaintiff's Memorandum in Support of Its Motion for Partial Summary Judgment [hereinafter Plaintiff's Summary Judgment Memorandum, pp. 32, 42, 43.

Again, the similarity of Scientology's objection to the provision in Ordinance No. 3479–84 convinces the Court that any alteration in the legal relationship of the party caused by the change was de minimis.

The Court also measured the change in the parties' legal relationship by comparing the allegations Scientology made in its complaints against the two ordinances. Scientology's complaint against Clearwater based on Ordinance No. 3091–83 asked for relief based on the issues of allegedly bad motive, allegedly discriminatory impact on Scientology, allegedly unconstitutional requirements of maintaining and disclosing information, alleged overbreadth and vagueness, allegedly excessive discretion given the City Attorney, alleged governmental entanglement with religion, alleged violation of rights of privacy, alleged violation of rights of free speech, and alleged illegality of prohibiting a variety of acts. Scientology's amended complaint in 84–96 against Ordinance No. 3479–83, and its complaint in 84–719 against Ordinance No. 3479–84 rest on essentially the same allegations as its original complaint against Ordinance No. 3091–83.

Neither Scientology nor Clearwater cited a case that set out the meaning of "materially altering the legal relationship of the parties," and the Court did not find a case exactly on point. However, *Stefan v. Laurenitis*, 889 F.2d 363, 369 (1st Cir.1989), provided some guidance. The *Stefan* Court held that a monetary settlement is "a resolution of the dispute which changes the legal relationship" between the parties *Stefan*, 889 F.2d at 369 (citing *Texas Teachers*,

489 U.S. at 792, 109 S.Ct. at 1493) when the settlement was not *de minimis* and the settlement might deter future harassment of Plaintiffs.

This Court does not imply that a monetary settlement must be present to materially alter the legal relationship; the Court does, however, insist that a material alteration in the parties' legal relationship in the Plaintiff's favor result before the Court can determine that Plaintiff is a prevailing party deserving of attorneys' fees. When, as in this case, Plaintiff remains in essentially the same position, or perhaps in a worse position after a lawsuit, the Court cannot find that Plaintiff prevails. The similarity of Scientology's allegations in its suits against Ordinance No. 3091–83 and Ordinance No. 3479–84 convinces the Court that there was no material alteration in the parties' legal relationship as a result of Plaintiff's lawsuit 84–96.

The Court finds that Scientology did not meet the test for prevailing party status because its lawsuit in 84–96, did not vindicate Scientology's rights; did not force Clearwater to cease its challenged behavior; and did not materially alter the legal relationship between Scientology and Clearwater. Therefore, Scientology's motion for attorneys' fees is denied. Accordingly, it is

ORDERED that Case No. 84–96–Civ–T–17 is dismissed, with prejudice; it is further

ORDERED that PLAINTIFF CHURCH OF SCIENTOLOGY FLAG SERVICES ORGANIZATION's motion for attorneys' fees in Case No. 84–96–Civ–T–17 is denied.

DONE AND ORDERED.

### APPENDIX A

### CLEARWATER ORDINANCE 3479–84

Clearwater Ordinance 3479–84 applies to charitable organizations that solicit funds or property within Clearwater and to charitable organizations that offer within the city to make sales of property including, but not limited to books, tapes, publications and brochures whose proceeds will be used for charitable purposes. Section 100.01. The ordinance exempts organizations that annually collect monies from less than twenty people in Clearwater or that annually collect less than $10,000 there. Section 100.02.

Covered organizations must file a registration statement with the City Clerk. Section 100.03. The statement requires the organization to provide information about the collection and disbursement of funds, including names, addresses, and phone numbers of the soliciting organization, the person in charge of soliciting funds in Clearwater, and the person authorized to disburse those funds; a description of the soliciting organization, the methods of solicitation and the use to be made of the funds; the time period of the solicitation; and estimate of salaries, fees and costs to be incurred in soliciting; the names of organization officials or solicitors who have been 'convicted of serious crimes in the last five years; the names of other Florida cities in which the organization has solicited; and a statement that the organization maintains records or documents necessary to file the registration statement. The registration is a public document.

An organization that files similar information elsewhere may submit that filing in lieu of the registration statement. An organization that solicits only from members may provide the information to its members in a private statement, available only to members, in lieu of the registration statement. The organization must prepare the statement at least annually, must maintain the underlying records for three years from the date of each statement, and must make the records and statement reasonably available for inspection by each member of the charitable organization. Section 100.-02(3).

After an organization files its registration statement, the City Clerk must either issue a Certificate of Registration within ten working days or tell the organization what required information is missing from the statement. Section 100.03(2). If the Clerk does not issue a Certificate of Registration, the organization can continue to solicit in Clearwater without the statement until the Clerk's decision is upheld by a court. Section 100.03(3). The City bears the burden of initiating court proceedings,

which it must do within ten working days of the refusal of a permit. *Id.* In such proceedings, the organization can show that the missing information should not be required because furnishing it would impose a special hardship on the organization. Section 100.03(4).

The registration statement is effective for one year. Sixty days after the year is over, the organization must file a statement containing information as to the amount of funds and property collected in Clearwater during the year; the costs incurred for wages, fees, advertising, and other expenses; and the utilization of the proceeds in approximate amounts. Section 100.03(8).

Under the ordinance, certain acts are unlawful. These include willful failure to file required statements or knowingly filing false statements, fraud or misrepresentation to obtain money or property; promising any person that the proceeds of a solicitation of funds will be refunded upon request, and thereafter willfully failing to make a written refund request within 60 days; promising any person that he or she will receive a refund upon request without providing a written statement of the refund terms and conditions; knowing misrepresentation that a donor will obtain a federal tax deduction, willful use of solicited funds to commit a crime, and willful failure to maintain required records. Section 100.05.

The City Attorney is empowered to investigate alleged violations of the ordinance, but only if he has received ten bona fide, sworn complaints setting forth facts showing a violation and harm. Section 100.-06(1). In an investigation, the city attorney can subpoena persons and records, Section 100.06(2), but he has no power to enforce his subpoenas and must go to court for enforcement. If an investigation shows probable cause to believe a violation exists, the City Attorney can prosecute. Section 100.06(3). Finally, the statute contains an explicit severability clause.